[No. E031562. Fourth Dist., Div. Two. Aug. 22, 2003.]

PAULA M. GREEN, Plaintiff and Appellant, v.
PAR POOLS, INC., Defendant and Respondent.

■■■■■■■■■■■■■■■■

## Counsel

Law Offices of Fred J. Knez and Fred J. Knez for Plaintiff and Appellant.

Fonda & Fraser and Peter M. Fonda for Defendant and Respondent.

## Opinion

**HOLLENHORST, Acting P. J.**—This case requires us to focus on the burden of proof requirements under Labor Code section 1197.5, California's equal pay law.[1] Plaintiff Paula M. Green filed this action for sex discrimination, retaliation, and infliction of emotional distress. In her second cause of action, Ms. Green alleged that defendant Par Pools, Inc., had failed to pay her equal pay for equal work as required by section 1197.5. After a court trial, the trial court rejected each of her claims.[2]

On appeal, Ms. Green argues that the trial court erred (1) by requiring her to prove discriminatory intent to state a prima facie case under section 1197.5; (2) by failing to shift the burden to defendant to show the existence of an exception to the section's equal pay requirement; and (3) by requiring her to prove discriminatory intent to state a prima facie case for retaliatory discharge.

Defendant Par Pools contends that the only issue presented is whether substantial evidence supports the trial court's decision. It finds ample substantial evidence.

While we agree with plaintiff that the special verdict form which the parties drafted and presented to the trial court was defective in its terminology, we agree with defendant that substantial evidence supports the trial court's decision.

We first discuss the applicable statutory framework and then discuss the factual and legal issues.

### EQUAL PAY FOR EQUAL WORK

Section 1197.5 is California's equal pay law. Its operative subsection states: "No employer shall pay any individual in the employer's employ at wage rates less than the rates paid to employees of the opposite sex in the

---

[1] Unless otherwise indicated, all further statutory references are to the Labor Code.

[2] This appeal is limited to the section 1197.5 claims.

same establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where the payment is made pursuant to a seniority system, a merit system, a system which measures earnings by quantity or quality of production, or a differential based on any bona fide factor other than sex." (§ 1197.5, subd. (a).)

Only two California cases are cited in the Deerings annotations to the statute. (*Jones v. Tracy School Dist.* (1980) 27 Cal.3d 99 [165 Cal.Rptr. 100, 611 P.2d 441]; *Bass v. Great Western Sav. & Loan Assn.* (1976) 58 Cal.App.3d 770 [130 Cal.Rptr. 123].) The apparent reason is that an aggrieved employee generally brings suit under both the California statute and the federal Equal Pay Act of 1963 (29 U.S.C. § 206(d)(1)), or under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12940, subd. (a)) or its federal counterpart, title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.). (See generally Advising Cal. Employers (Cont.Ed.Bar 2d ed. 2003) Discrimination and Harassment, § 16, p. 946 et seq.) In this case, however, plaintiff elected to assert her equal pay claim solely under section 1197.5.

The California statute is nearly identical to the federal Equal Pay Act of 1963. (29 U.S.C. § 206(d)(1).) Accordingly, in the absence of California authority, it is appropriate to rely on federal authorities construing the federal statute: "Although state and federal antidiscrimination laws 'differ in some particulars, their objectives are identical, and California courts have relied upon federal law to interpret analogous provisions of the state statute. [Citations.]' [Citation.]" (*Muzquiz v. City of Emeryville* (2000) 79 Cal.App.4th 1106, 1116 [94 Cal.Rptr.2d 579]; see generally Chin et al., Cal. Practice Guide: Employment Litigation (The Rutter Group 2003) ¶ 11:1075, p. 11-107.)

Plaintiff Green relies on two federal cases: *Corning Glass Works v. Brennan* (1974) 417 U.S. 188 [41 L.Ed.2d 1, 94 S.Ct. 2223], and *Mitchell v. Jefferson County Bd. of Educ.* (11th Cir. 1991) 936 F.2d 539.

In *Corning*, the Supreme Court considered an employee's equal pay claim under the federal equal pay law. It found that Congress intended to require equal wages for equal work by requiring the plaintiff to first prove that "an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.' " (*Corning Glass Works v. Brennan, supra,* 417 U.S. 188, 195.) The court then noted that the act, like the California statute, has four exceptions, including a

catchall exception for a differential based on any factor other than sex.[3] The court held that once the plaintiff has carried her burden of showing "that the employer pays workers of one sex more than workers of the opposite sex for equal work, the burden shifts to the employer to show that the differential is justified under one of the Act's four exemptions." (*Corning,* at p. 196.) The court found that Corning had not met this burden, and that it was therefore obligated to cure the differential by raising the women's wages at issue to those of the men. (*Id.* at pp. 204–208.)

In *Mitchell,* a female employed by a school board as a printer brought an action under title VII and the Equal Pay Act. With regard to the equal pay claim, the Eleventh Circuit Court of Appeals said: "The Supreme Court has stated that the [Equal Pay Act] consists of two parts, a definition of the violation followed by four affirmative defenses. [Citation.] A plaintiff establishes a prima facie case by showing that her employer has paid different wages to male and female employees for equal work, as described in the first part of the Act. [Citation.] The burden then shifts to the employer to show justification for the differential by establishing one of the exceptions, or affirmative defenses, contained in the second part of the Act. [Citations.] To establish a prima facie case an employee 'need only show discrimination in pay against an employee vis-a-vis one employee of the opposite sex.' [Citation.] The plaintiff is not required to prove intentional discrimination, just that the employer pays unequal wages for equal work, as defined in the Act." (*Mitchell v. Jefferson County Bd. of Educ., supra,* 936 F.2d 539, 547.) Since the court had found the seniority system exception inapplicable, the case was remanded for a determination as to whether the two employees performed equal work.

Two years ago, in *Slatkin v. University of Redlands* (2001) 88 Cal.App.4th 1147 [106 Cal.Rptr.2d 480], we addressed burden of proof issues in a racial discrimination case brought under the FEHA. We quoted our Supreme Court's decision in *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317 [100 Cal.Rptr.2d 352, 8 P.3d 1089]: " '... California has adopted the three-stage burden-shifting test established by the United States Supreme Court for trying claims of discrimination ... based on a theory of disparate treatment. [Citations.]' [Citation.]" (*Slatkin v. University of Redlands, supra,* 88 Cal.App.4th 1147, 1156.) The three stages are (1) the plaintiff bears the initial burden of establishing a prima facie case of discrimination; (2) the employer must then offer a legitimate nondiscriminatory reason for the adverse employment decision; and (3) the plaintiff bears the burden of proving the employer's proffered reason was pretextual. (*Ibid.*) We then applied this test to uphold the

---

[3] The California statute uses the phrase "a differential based on any bona fide factor other than sex." (§ 1197.5, subd. (a).)

trial court's granting of a motion for summary judgment on the FEHA cause of action. Both *Guz* and *Slatkin* are summary judgment cases.

A question arises as to whether the three-stage burden-shifting test is appropriate at trial. In *Muzquiz v. City of Emeryville, supra,* 79 Cal.App.4th 1106, 1109, the court considered an age discrimination claim under the FEHA. The plaintiff asserted that the trial court erred, in a court trial, by adopting an erroneous burden of proof, i.e., the plaintiff argued she did not need to prove satisfactory job performance in order to establish a prima facie case. (*Muzquiz,* at p. 1119.) The appellate court stated: "Because the only issue properly before the trier of fact was whether the City's adverse employment decision was motivated by discrimination on the basis of age, the shifting burdens of proof regarding appellant's prima facie case and the issue of legitimate nondiscriminatory grounds were actually irrelevant." (*Ibid..*) Although the trial court's statement of decision was stated in terms of burden shifting, the appellate court upheld the ultimate determination of the trial court that the plaintiff had failed to prove age discrimination. (*Ibid.*) The appellate court found substantial evidence supported the trial court's factual determination. (*Id.* at p. 1120.) Defendant here makes substantially the same argument without relying on *Muzquiz.*

Although *Muzquiz* was not cited in our Supreme Court's subsequent *Guz* decision, we believe the rationale of *Guz* casts substantial doubt on the continued vitality of *Muzquiz.* As noted above, *Guz* states that California has adopted the three-stage burden-shifting test for discrimination claims. *Guz* refers to this as the *McDonnell Douglas* test, after the United States Supreme Court decision in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792 [36 L.Ed.2d 668, 93 S.Ct. 1817]. In *McDonnell Douglas,* the court stated the test in the context of a remand for trial. (*Id.* at p. 798.) *Guz* therefore states: "At trial, the *McDonnell Douglas* test places on the plaintiff the initial burden to establish a prima facie case of discrimination. This step is designed to eliminate at the outset the most patently meritless claims, as where the plaintiff is not a member of the protected class or was clearly unqualified, or where the job he sought was withdrawn and never filled. [Citations.] ... [¶] ... [¶] If, at trial, the plaintiff establishes a prima facie case, a presumption of discrimination arises. [Citations.] This presumption, though 'rebuttable,' is 'legally mandatory.' [Citations.] ... [¶] Accordingly, at this trial stage, the burden shifts to the employer to rebut the presumption by producing admissible evidence, sufficient to 'raise[] a genuine issue of fact' and to 'justify a judgment for the [employer],' that its action was taken for a legitimate, nondiscriminatory reason. [Citations.] [¶] If the employer sustains this burden, the presumption of discrimination disappears. [Citations.] The plaintiff must then have the opportunity to attack the employer's proffered reasons as pretexts for discrimination, or to offer any other evidence of discriminatory motive. [Citations.] In an appropriate case, evidence of dishonest reasons,

considered together with the elements of the prima facie case, may permit a finding of prohibited bias. [Citations.] The ultimate burden of persuasion on the issue of actual discrimination remains with the plaintiff. [Citations.]" (*Guz v. Bechtel National, Inc.*, supra, 24 Cal.4th 317, 354–356.)

■    We therefore conclude that it is appropriate to apply the three-stage burden-shifting test which is used to establish sex discrimination under the federal Equal Pay Act to the trial of an action under section 1197.5 that alleges sexual discrimination by the payment of unequal wages. In the equal pay context, the burden-shifting test requires only that the plaintiff must show that the employer pays workers of one sex more than workers of the opposite sex for equal work. (*Corning Glass Works v. Brennan*, supra, 417 U.S. 188, 196.) If the plaintiff does so, the employer then has the burden of showing that one of the exceptions listed in section 1197.5 is applicable. (*Corning*, at p. 196.) If the employer does so, the employee may show that the employer's stated reasons are pretextual. (*Slatkin v. University of Redlands*, supra, 88 Cal.App.4th 1147, 1156.)

## THE TRIAL COURT'S DECISION

The trial court asked the parties to structure their closing arguments to the format of the issues of fact to be decided. The parties submitted special verdict forms, and the trial court used a form as its statement of decision. Although a court trial is normally followed by a tentative decision and preparation of a statement of decision which explains the factual and legal basis of the decision on each controverted issue (Code Civ. Proc., § 632; Cal. Rules of Court, rules 232 & 232.5), plaintiff does not attack the procedure used by the trial court nor the form of the statement of decision. (See, e.g., *Muzquiz v. City of Emeryville*, supra, 79 Cal.App.4th 1106, 1124–1126.)

The trial court found that plaintiff did not prove, by a preponderance of the evidence, a prima facie case of discriminatory treatment under section 1197.5, and did not establish a retaliatory termination for asserting her rights under section 1197.5.[4]

---

[4] Plaintiff limits this appeal to an attack on findings III, IV, V, and VI. These are:

"III. ISSUE—Did the plaintiff prove by a preponderance of the evidence, a prima facie case of discrimination in terms of her request for equal compensation, terms, conditions and privileges of employment?

"A. FINDING—No.

"IV. ISSUE—Did the plaintiff prove by a preponderance of the evidence, a prima facie case as against the defendant Par Pools, Inc., a corporation, of retaliatory termination based on her request for equal compensation, terms, conditions and privileges of employment?

"A. FINDING—No.

"V. ISSUE—Did the plaintiff prove by a preponderance of the evidence, a prima facie case as against the defendant Par Pools, Inc., a corporation, of violating the California Equal Pay Act under Labor Code § 1197.5[?]

## STANDARD OF REVIEW

■ We agree with defendant that the standard of review is primarily a substantial evidence standard: " 'Where findings of fact are challenged on a civil appeal, we are bound by the "elementary, but often overlooked principle of law, that ... the power of an appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted," to support the findings below. [Citation.] We must therefore view the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor in accordance with the standard of review so long adhered to by this court.' [Citation.]" (*Bickel v. City of Piedmont* (1997) 16 Cal.4th 1040, 1053 [68 Cal.Rptr.2d 758, 946 P.2d 427].)

■ Nevertheless, this appeal presents some mixed questions of law and fact. In such a case, we give deference to the trial court's factual decisions and review questions of law under a nondeferential standard. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 800 [35 Cal.Rptr.2d 418, 883 P.2d 960].)

## SUBSTANTIAL EVIDENCE

1. *Facts Relating to the Equal Pay Issue.* In January 1998, plaintiff Green responded to a newspaper advertisement and applied to defendant Par Pools for a job as a construction superintendent. The interviewer, Lois Clark, was the manager of the Ontario office of Par Pools. Ms. Clark and another interviewer, Sandra Duncan, found Ms. Green qualified for the job and offered her employment. Her background, training and experience are discussed below.

Ms. Green accepted the construction superintendent position and was paid at the rate of $400 per week. Ms. Green testified this pay rate was set by Ms. Clark. Initially, she was required to work with another construction superintendent, Trinidad Miranda, for an eight-week probationary period. During that time, she went with him on jobs to learn about the equipment and procedures used by defendant. At the end of the fifth week her probationary period was terminated and she was sent out to supervise swimming pool construction jobs.

Although defendant has no specific position descriptions or manuals, its construction superintendents are generally responsible for traveling to the

"A. FINDING—No.

"VI. ISSUE—Did the plaintiff prove by a preponderance of the evidence, a prima facie case as against the defendant Par Pools, Inc., a corporation, of retaliatory termination based on an alleged violation of Labor Code § 1197.5[?]

"A. FINDING—No."

customer's home and ensuring that the customer's swimming pool is installed in accordance with the approved plans and building codes. In addition, the construction superintendent must supervise the various subcontractors who actually build the swimming pool.

From January through July 24, 1998, Ms. Green and Mr. Miranda were the only construction superintendents in the Ontario office, and both did the same supervisory work. Work was divided between them on the basis of geography. Mr. Miranda, who had been with the company for 20 years, was paid at the rate of $1,000 a week. Ms. Green has no objection to Mr. Miranda's pay rate.

Mr. Miranda left defendant's employment on July 24, 1998, and Ms. Green was the sole construction superintendent in the Ontario office for a three-week period. About the same time, Ms. Clark left the company and Jeff Lockwood was appointed manager of the Ontario office. At that time, Ms. Green was being paid $500 a week plus a $100-a-week car allowance and a gas credit card.

A new construction superintendent, Robert Leyva, was then hired. Mr. Lockwood assured Ms. Green that she and Mr. Leyva would be equal in title and responsibilities. Nevertheless, Mr. Leyva was hired at the rate of $900 a week. Mr. Leyva was also given a truck that had been used by Mr. Miranda.

Ms. Green and Mr. Leyva shared construction superintendent duties for a two-week period. Ms. Green was given a more distant territory and Mr. Leyva was given jobs concentrated near the Ontario office. On August 21, 1998, Ms. Green requested and was refused a pay increase. Ms. Green testified that Mr. Lockwood demanded sexual favors when she requested the pay increase. Ms. Green was terminated a week later, on August 28, 1998, for allegedly poor performance.

Sergio Jiminez was hired to replace Ms. Green. He was paid at the rate of slightly more than $600 a week.

Ms. Green had no objections to being paid less than Mr. Miranda, but she does object to being paid less than Mr. Leyva and Mr. Jiminez.

2. *The Uncontradicted Evidence Supports the Conclusion That Plaintiff Presented a Prima Facie Case Under Section 1197.5.* As discussed above, the plaintiff in a section 1197.5 action must first show that the employer paid a male employee more than a female employee " 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.' " (*Corning Glass*

*Works v. Brennan, supra*, 417 U.S. 188, 195.) Ms. Green clearly met this burden by showing that a newly hired male, Mr. Leyva, was paid $900 a week while she was only paid $500 a week. Ms. Green's replacement, Mr. Jiminez, was paid slightly more than $600 per week.

Although defendant argues that the jobs being compared were not substantially equal, there is no question but that the jobs were identical. Each of the construction superintendents was supervising the construction of residential swimming pools. The only differences were the locations of the customer's homes. The trial court clearly erred by finding that plaintiff had not presented a prima facie case of unequal pay for equal work. (*Cherrey v. Thompson Steel Co., Inc.* (D.Md. 1992) 805 F.Supp. 1257, 1262 ["Discriminatory intent is not an element of a claim under the Equal Pay Act"].)

3. *The Law Interpreting the Catchall Exception.* In her statement of issues, plaintiff describes the issue as whether the trial court erred by not shifting the burden of proof to defendant to show the existence of a statutory exception. However, other than the erroneous wording of the statement of decision itself, there is no statement or even suggestion by the trial court which would support plaintiff's contention that the trial court did not properly shift the burden in its factual deliberations.

Instead, in her argument under this heading, plaintiff argues that defendant did not produce substantial evidence to establish an affirmative defense based on a statutory exception.

Defendant relies on the statutory catchall exception for "a differential based on any bona fide factor other than sex." (§ 1197.5.) Specifically, defendant argues that a pay differential was justified on the basis of Mr. Leyva's prior work experience.

Defendant cites *Irby v. Bittick* (11th Cir. 1995) 44 F.3d 949. In that case, the employer relied on the "any other factor other than sex" defense and the court held that "an Equal Pay Act defendant may successfully raise the affirmative defense ... if he proves that he relied on prior salary *and* experience in setting a 'new' employee's salary." (*Id.* at p. 955.) The court also held that "[e]xperience is an acceptable factor other than sex if not used as a pretext for differentiation because of gender. [Citation.]" (*Id.* at p. 956, fn. omitted.)

Defendant also relies on *Kouba v. Allstate Ins. Co.* (9th Cir. 1982) 691 F.2d 873. In that case, Allstate set the compensation of new agents on the basis of ability, education, experience and prior salary. (*Id.* at p. 874.) The court held that "[a]n employer ... cannot use a factor which causes a wage differential

between male and female employees absent an acceptable business reason. Conversely, a factor used to effectuate some business policy is not prohibited simply because a wage differential results." (*Id.* at p. 876, fn. omitted.) We equate "an acceptable business reason" with the California requirement that the defendant base its differential on "any bona fide factor other than sex." (§ 1197.5.)

Finally, in *Stanley v. University of Southern California* (9th Cir. 1999) 178 F.3d 1069, a female basketball coach objected to the fact that a male basketball coach was paid a much higher salary. The court held that the markedly disparate levels of experience and qualifications between the two coaches were nondiscriminatory reasons for the pay differential. (*Id.* at p. 1075.) The court agreed with the EEOC that " '[s]uperior experience, education, and ability may justify pay disparities if distinctions based on these criteria are not gender based.' [Citation.]" (*Ibid.*)

We agree with and apply these authorities in determining whether defendant established its affirmative defense based on a bona fide factor other than sex.

4. *The Employer's Evidence Justifying the Pay Differential.* At the time Mr. Leyva was hired, Ms. Green was the sole construction superintendent in the Ontario office. She agreed that she needed assistance because it was August, which is the busiest time of year in the residential swimming pool construction business.

A. *Mr. Leyva's qualifications.* Mr. Leyva testified that he began working in the swimming pool business in 1970. He worked in a retail sales position with Secard Pools until 1977. He then worked in pool construction for the same employer for a year. Next, he began his own pool and spa plumbing business and worked in that employment for four or five years. He returned to his construction superintendent position with Secard Pools until 1992. He scheduled subcontractors and was responsible for on-site supervision of construction.

In 1992, he moved to Nevada and worked for Tango Pools in the same capacity. There was a large volume of work and he spent most of his time scheduling subcontractors. He subsequently returned to California and became a construction superintendent for Anthony Sylvan Pools for three years. He then worked for Schaffer Pools in Temecula for six or seven months before being hired by defendant in August 1998. He was recruited by Mr. Lockwood, whom he had known when both were working at Anthony Sylvan Pools. He was paid $900 a week and was given a company truck and gas credit card.

Mr. Leyva thus had 21 years' experience (1977–1998) as a swimming pool construction superintendent.[5] Because of his background, Mr. Leyva was able to begin supervising about 50 projects immediately, without a probationary period. He met with plaintiff and they agreed to divide responsibilities geographically.

After Ms. Green was terminated, Mr. Leyva recommended a friend of his, Sergio Jiminez, and Mr. Jiminez was hired to replace Ms. Green. Mr. Jiminez began work immediately, without a probationary period. He was paid over $600 per week. He did not receive a company truck but was given a gas credit card. He also testified about his qualifications.

B. *Ms. Green's qualifications.* Ms. Green testified that she has two years of college education in business administration. She had Class C-53 and C-61 contractor's licenses which allowed her to do all phases of swimming pool construction. However, she had never constructed a pool under those licenses and they became inactive in 1996.

Ms. Green entered the swimming pool construction business in 1972. Her job involved swimming pool service and repair. From 1974 to 1976 she worked for a company which constructed swimming pools without extensive use of subcontractors. She then joined a company which specialized in resurfacing swimming pools by inserting new fiberglass linings. She supervised the construction crews of three offices in California and the sales staff. She continued with that company until it went bankrupt in 1996. As administrative assistant to the president, she also handled financial, legal, and personnel matters.

In 1996 and 1997, Ms. Green was a long-distance truck driver. She therefore agreed that her skills were rusty when she applied for the job with defendant in 1998 and she did not object to a probationary period.

The gist of Ms. Green's objection to the salary arrangements is that she thought Mr. Leyva should be paid the same as she because they both had relatively equal experience. But she agreed that a person with greater experience should generally be paid more.

C. *Mr. Lockwood's testimony.* Mr. Lockwood was the manager of the Ontario office at the time Mr. Leyva was hired. He testified that the company had a critical need for an experienced construction superintendent in August 1998. He knew Mr. Leyva from a prior employment and he offered Mr.

---

[5] Ms. Green testified that Mr. Lockwood told her that Mr. Leyva had 19 years' experience. She responded by telling Mr. Lockwood that she had 23 years' experience in the industry. She testified that he was apparently unaware of her employment history.

Leyva a construction superintendent job at a pay rate of over $750 plus other unspecified portions of a salary package. He felt that this offer was necessary to entice Mr. Leyva to leave his previous employment, even though he was unaware of Mr. Leyva's pay rate at his previous employment. Although he felt Ms. Green lacked experience and had problems performing the work, he praised Mr. Leyva highly: "In my 25 years in the pool business I have never known a better superintendent that could cover more ground and cover more pools and take care of business with no complaints from customers."

D. *Defendant sustained its burden of proof.* The foregoing testimony establishes that defendant, acting through Mr. Lockwood, had substantial business reasons to employ Mr. Leyva. Mr. Leyva's many years of direct construction superintendent experience supports his pay rate. The pay rate was comparable to that of Mr. Miranda who had been employed by defendant for a number of years at the rate of $900 per week.

Plaintiff, on the other hand, had been out of the swimming pool industry for two years at the time she was employed by defendant. She acknowledged that she needed a probationary period to reeducate her in the industry. Although her prior experience qualified her for the job, it was primarily office experience as an administrative assistant to the company president.

Viewing the evidence most favorably to defendant, we conclude that defendant provided sufficient evidence to establish that Mr. Leyva's experience justified his employment at a substantially greater wage rate than Ms. Green. Defendant therefore established that business reasons other than sex led to the wage differential.

Ms. Green had an opportunity to demonstrate that defendant's stated reasons were pretextual. She failed to do so and the trial court, sitting as the trier of fact, was entitled to reject her Equal Pay Act claims.

## THE RETALIATION CLAIM

Ms. Green did not state a separate retaliation claim in her complaint or in her oral argument to the trial court. In its statement of decision, the trial court found that she had not proven retaliatory termination for requesting equal compensation and terms and conditions of employment. She now limits her appeal to section 1197.5 issues but concedes that section 1197.5 contains no provision for recovering damages because of a retaliatory discharge for asserting an equal pay claim under that section.

Instead, plaintiff argues that her retaliation claim is brought under the FEHA, Government Code section 12940, subdivisions (a) and (h). Subdivision (a) states the general prohibition against discrimination while

subdivision (h) states that it is an unlawful employment practice "[f]or any employer ... to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." Although her equal pay claim was not under "this part," i.e., under FEHA, she argues that retaliation is prohibited by this statute and public policy.[6]

Plaintiff relies on *Gantt v. Sentry Insurance* (1992) 1 Cal.4th 1083 [4 Cal.Rptr.2d 874, 824 P.2d 680], overruled on other grounds in *Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66, 80 [78 Cal.Rptr.2d 16, 960 P.2d 1046]. In that case, our Supreme Court held that a person who was discharged for testifying in support of a coworker's sexual harassment claim stated a cause of action under *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167 [164 Cal.Rptr. 839, 610 P.2d 1330] for tortious discharge against public policy. The court said: "A review of the pertinent case law in California and elsewhere, however, reveals that few courts have recognized a public policy claim absent a statute or constitutional provision evidencing the policy in question. Indeed, as courts and commentators alike have noted, the cases in which violations of public policy are found generally fall into four categories: (1) refusing to violate a statute [citations]; (2) performing a statutory obligation [citation]; (3) exercising a statutory right or privilege [citation]; and (4) reporting an alleged violation of a statute of public importance [citations]." (*Gantt*, at pp. 1090–1091, fn. omitted, overruled on other grounds in *Green v. Ralee Engineering Co., supra,* 19 Cal.4th 66, 80.)

■ While an assertion of equal pay rights under section 1197.5 may well be a sufficient basis for a public policy claim under *Tameny*, an issue we find it unnecessary to decide, plaintiff has not brought such an action. (See generally Chin et al., Cal. Practice Guide: Employment Litigation, *supra,* ¶¶ 5:2 to 5:258, pp. 5-1 to 5-25.) Instead, plaintiff has limited her equal pay claims, and this appeal, to section 1197.5. Since that section does not contain a provision against retaliation, plaintiff has not shown the trial court erred in finding against her on her retaliation claims.[7]

---

[6] Retaliation is also prohibited by title VII and the Americans with Disabilities Act. (See generally Chin et al., Cal. Practice Guide: Employment Litigation, *supra,* ¶¶ 7:680 to 7:850, pp. 7-73 to 7-88.3.)

[7] Even if plaintiff had brought a wrongful discharge action predicated on retaliation, the trial court's decision, as the trier of fact, is supported by substantial evidence. Defendant produced a number of witnesses who testified regarding Ms. Green's job performance, and the trial court, as the trier of fact, could reasonably determine that she was terminated for legitimate business reasons, rather than being terminated in retaliation for seeking equal pay for equal work. (See, e.g., *Fisher v. San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590, 614–615 [262 Cal.Rptr. 842].)

## DISPOSITION

The judgment is affirmed.

McKinster, J., and Gaut, J., concurred.