[No. B186224. Second Dist., Div. One. Feb. 22, 2007.]

DANNA HALL et al., Plaintiffs and Appellants, v.
THE COUNTY OF LOS ANGELES et al., Defendants and Respondents.

**COUNSEL**

Blumenthal & Markham, Norman B. Blumenthal, David R. Markham, Kyle R. Nordrehaug; Clark & Markham, R. Craig Clark, David R. Markham; The Lewis Law Firm and Murray Lewis for Plaintiffs and Appellants.

Jones Day, Elwood Lui, Philip E. Cook; Greenberg Traurig, Scott D. Bertzyk, Karin L. Bohmdoldt; Bergman & Dacey and Gregory M. Bergman for Defendants and Respondents The County of Los Angeles and The Office of Los Angeles County Counsel.

Goldstein & Goldstein and Charles H. Goldstein for Defendant and Respondent Auxiliary Legal Services, Inc.

**OPINION**

**VOGEL, J.**—This is a class action alleging gender-based wage discrimination in violation of the state and federal Equal Pay Acts and the California Fair Employment and Housing Act in which the employer prevailed by summary judgment. We affirm.

## FACTS

### A.

In 1984, the Los Angeles County juvenile court's caseloads increased so rapidly that many additional lawyers were needed to represent minors and others subject to the court's jurisdiction, thus triggering section 44.7 of article IX of the Los Angeles County Charter, which provides: "Nothing in

this Article shall prevent the County, when the Board of Supervisors finds that work can more economically or feasibly be performed by independent contractors, from entering into contracts for the performance of such work." In response to the caseload crisis, the board authorized "as-needed" contracts with lawyers for the juvenile court, and lawyers (including Danna Hall and others included in our references to Hall) entered contracts with the county in which they were designated as "independent contractors."

In June 1989, county counsel informed the board that the juvenile court's caseloads had stabilized so that it would be "administratively more efficient to acquire the needed [attorney] services through a single employer-provider," and asked the board to approve the formation of Auxiliary Legal Services, Inc. (ALS), to provide "legal and related services to supplement necessary services" provided by county counsel. County counsel told the board that "a new infrastructure [was] needed to enable the County to continue to cost effectively manage and maintain [a] professional corps of service providers without increasing the number of permanent classified County employees." The board adopted county counsel's proposals, ALS was created, and the county and ALS then entered a contract pursuant to which ALS agreed to provide lawyers in "such number . . . as [were] from time to time requested" to work "under the direction and control of County Counsel." Under the terms of the contract, ALS was an "independent contractor" and the people provided by ALS were to be "employees solely of [ALS] and not of [the] County for any purpose." Hall became an ALS employee and was thereafter paid by ALS.

### B.

In 1999, Hall filed a class action against ALS, county counsel, and the county, alleging in her subsequently amended complaint that the "three defendants [were] 'joint employers' or a 'single enterprise,' " and that ALS was merely a "payrolling scheme" that enabled county counsel to maintain a "two-tier [attorney] work force" notwithstanding that all lawyers did the same work under the same working conditions. As characterized by Hall, her "lawsuit 'is a federal and state equal pay act and . . . sex discrimination case brought on behalf of a class of about 200 women attorneys channeled by the County into the predominantly female [ALS] unit while receiving substantially less pay and benefits than the predominantly male . . ."official" [county counsel] employee unit.' " (*Hall v. County of Los Angeles* (Feb. 9, 2005, B170447) [nonpub. opn.].) Hall alleged claims under the federal and state

Equal Pay Acts (EPA; 29 U.S.C. § 206(d) et seq.; Lab. Code, § 1197.5) and the California Fair Employment and Housing Act (FEHA; Gov. Code, § 12940).[1]

## C.

ALS, county counsel, and the county answered, conducted discovery, then moved for summary judgment, contending there were separate applicant pools for ALS and county counsel; that the hiring decisions were based on merit, not gender; that although there were more female lawyers at ALS than county counsel, both groups were gender-integrated; that there were no gender-based barriers to entry into either group; and that similarly situated males and females within each group were treated the same in terms of pay and benefits.[2] In support of its motion, the County presented the following evidence.

During the relevant time, the highest differential between female and male lawyers at ALS was 71 percent female, 29 percent male; the lowest differential at county counsel was 22 percent female, 78 percent male. Similarly situated male and female lawyers at ALS were treated the same in terms of salary and benefits, and similarly situated male and female lawyers at county counsel were treated the same in terms of salary and benefits.[3]

Between 1989 and 1999, there were more than 30 competitive examinations open to outside applicants (including ALS employees) for positions with county counsel. Notices of the exams were posted and otherwise publicly disseminated, and all qualified applicants were allowed to take the exams

---

[1] The class was certified in February 2002, at which time the trial court noted that, in 1999, "the County allegedly moved [Hall] to the County payroll but, according to [Hall], the existing pay disparity was embedded into [her] employment relationships by fixing [her] title and salary at the County pay grade and step equivalent to [her] ALS rate[] existing at the time of transfer."

[2] To be precise about the summary judgment motion, it was originally filed by the county and county counsel, then joined by ALS. Unless the context suggests otherwise, our subsequent references to the county include ALS and county counsel.

[3] Before the summary judgment motion was filed, the trial court imposed discovery sanctions in the form of evidentiary rulings against Hall, including findings that "any difference in pay and benefits received by male and female attorneys who received paychecks from ALS were not the result of gender discrimination," and "any difference in pay and benefits received by male and female attorneys who were recognized as members of the County's classified Civil Service at County Counsel's Office were not the result of gender discrimination." Hall does not challenge these rulings.

(which consisted of an oral interview, prior experience, education, and the other usual factors). An eligibility list was created and all attorney positions—181 (58 percent of whom were female, 42 percent male)—were filled from that list.

The county presented evidence to show that county counsel's lawyers were paid more than ALS lawyers "due to cost-savings," not gender—the very reason ALS was created back in 1989, as shown by the documents presented to and created by the board of supervisors, which entered into the contract with ALS because it was "an economical and cost effective way to provide . . . supplemental legal services and representation for its officers and employees and for minors in dependency court proceedings." Indeed, the county's "auditor controller" had opined in 1989 that the ALS contract would result in "[a]lmost two million dollars in annual costs savings" to the county.

### D.

Hall opposed the motion, contending that county counsel's "pervasive control of ALS" meant the ALS lawyers were county counsel's "common law" employees and, as such, entitled to be paid "in accordance with civil service compensation rules." Instead, claimed Hall, ALS's female lawyers were paid lower salaries and given fewer benefits than their male civil service counterparts. Although Hall said she disputed the county's evidence, the county's objections to portions of her evidence were sustained (and she does not challenge those rulings on this appeal). As a result, there were no disputed material facts, and the trial court granted the county's motion.

### DISCUSSION

The EPA exists to ensure that employees performing equal work are paid equal wages without regard to gender. To prove a violation of that basic principle, a plaintiff must establish that, based on gender, the employer pays different wages to employees doing substantially similar work under substantially similar conditions.[4] If that prima facie showing is made, the burden

---

[4] As relevant, subdivision (d)(1) of 29 United States Code section 206 provides that "[n]o employer . . . shall discriminate . . . between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex . . . ." Because Labor Code section 1197.5 is substantively indistinguishable from its federal counterpart, California's courts rely on federal authorities construing the

shifts to the employer to prove the disparity is permitted by one of the EPA's statutory exceptions—here, that the disparity is based on a factor other than sex. (29 U.S.C. § 206(d)(1); Lab. Code, § 1197.5, subd. (a); *Corning Glass Works v. Brennan* (1974) 417 U.S. 188, 195 [41 L.Ed.2d 1, 94 S.Ct. 2223]; *E.E.O.C. v. Maricopa Cty. Community College Dist.* (9th Cir. 1984) 736 F.2d 510, 513.) If an exception is established, the burden shifts back to the plaintiff to prove pretext. (*Maxwell v. City of Tucson* (9th Cir. 1986) 803 F.2d 444, 446.) As the party moving for summary judgment, the County had to establish, by undisputed evidence, that Hall could not prove one or more elements of her claim, or that it had a complete defense. (Code Civ. Proc., § 437c, subds. (*o*), (p)(2); *Martin v. Lockheed Missiles & Space Co.* (1994) 29 Cal.App.4th 1718, 1730–1731 [35 Cal.Rptr.2d 181].)

## I.

Hall contends county counsel is her "common law" employer and that, therefore, the appropriate "comparator" (the person or group to whom the comparison is made) is male county counsel lawyers who earn more than she does.[5] We agree with the county that, even assuming Hall is viewed as an employee of county counsel, she is using the wrong comparator and that the appropriate comparator is male ALS lawyers.

## A.

█ To establish her prima facie case, Hall had to show not only that she is paid lower wages than a male comparator for equal work, but that she has selected the proper comparator. "The EPA does not require perfect diversity between the comparison classes, but at a certain point, when the challenged policy effects [*sic*] both male and female employees equally, there can be no EPA violation. [Citation.] [A plaintiff] cannot make a comparison of one

---

federal statute. (*Green v. Par Pools, Inc.* (2003) 111 Cal.App.4th 620, 623 [3 Cal.Rptr.3d 844]; *Mixon v. Fair Employment & Housing Com.* (1987) 192 Cal.App.3d 1306, 1316 [237 Cal.Rptr. 884].)

[5] The concept of "common law employee" (a person over whom the employer has control about the details of the work) comes from *Metropolitan Water Dist. v. Superior Court* (2004) 32 Cal.4th 491, 509 [9 Cal.Rptr.3d 857, 84 P.3d 966], where our Supreme Court held that workers leased by the Metropolitan Water District from independent labor suppliers must be enrolled as members of the California Public Employees Retirement System because the definition of "employee" under the governing statute does not have an exception to mandatory enrollment for employees hired through private labor suppliers.

classification composed of males and females with another classification of employees also composed of males and females." (*Arthur v. College of St. Benedict* (D.Minn. 2001) 174 F.Supp.2d 968, 976; see *Hofmister v. Mississippi State Dept. of Health* (S.D.Miss. 1999) 53 F.Supp.2d 884, 891 [the "legislative history of the EPA shows that differences in pay between groups or categories of employees that contain both men and women within each group or category are not covered by the EPA"].)

In *Schulte v. State of New York* (E.D.N.Y. 1981) 533 F.Supp. 31, a woman sued the state for wage discrimination, contending she and a predominantly female class of "psychiatric social workers" (70 percent female, 29 percent male) performed substantially the same work for less pay than the predominantly male class of "psychologists" (67 percent male, 31 percent female). (*Id.* at pp. 33, 37–38.) The state responded with evidence that although psychologists earned more than social workers, male and female social workers were paid the same wages and afforded the same benefits, and male and female psychologists were paid the same wages and afforded the same benefits. (*Id.* at pp. 37–38.) The court held that because there was "such a substantial representation of the 'minority sex' within each job classification, . . . the fact that they [were] paid different salaries [did] not establish sex discrimination[ because the EPA was not] [¶] . . . [¶] . . . intended to address the situation where the employer pays different wages to two different job classifications, each of which include both men and women." (*Id.* at pp. 38–39; see also *Arthur v. College of St. Benedict, supra,* 174 F.Supp.2d at p. 976; *Beall v. Curtis* (M.D.Ga. 1985) 603 F.Supp. 1563.)

■ Because undisputed evidence establishes that, at any given time, ALS and county counsel both employed a substantial number of women and that, within ALS, women were paid the same as men, there is no basis for Hall's use of a male county counsel lawyer as a comparator. For this reason alone, Hall's claims fail as a matter of law. (*Strag v. Board of Trustees* (4th Cir. 1995) 55 F.3d 943 [failure to identify an appropriate comparator means the plaintiff has not set forth a prima facie case].)

### B.

Assuming that Hall could justifiably compare ALS female lawyers to county counsel male lawyers, summary judgment was proper because the undisputed evidence establishes that the wage disparity between ALS and county counsel was based on an acceptable business reason, which is a

recognized "factor other than sex." (*Kouba v. Allstate Ins. Co.* (9th Cir. 1982) 691 F.2d 873, 874–876; *Green v. Par Pools, Inc., supra,* 111 Cal.App.4th at pp. 629–630.)

The county's undisputed evidence established that county counsel's use of independent contractors was authorized by the county's charter as a gender-neutral cost-saving measure, and that the contract with ALS was entered "to develop an economical and cost effective way to provide . . . supplemental legal services." At a time when there were few job openings at county counsel due to hiring freezes and other budgetary constraints (only about 180 openings between 1989 and 1999), ALS provided an employment option for more than 250 people—who in accepting positions with ALS knew they were not becoming civil service employees.

Assuming (as Hall insists) that county counsel is Hall's common law employer, the two-tier wage and benefits system is not discriminatory because there was a legitimate and nondiscriminatory cost-savings purpose for ALS's existence. (*Prieto v. City of Miami Beach* (S.D.Fla. 2002) 190 F.Supp.2d 1340, 1351–1354; *Arthur v. College of St. Benedict, supra,* 174 F.Supp.2d at pp. 980–981; *Aldrich v. Randolph Cent. School Dist.* (2d Cir. 1992) 963 F.2d 520.) Accordingly, summary judgment was proper on this ground.

## II.

Hall contends her FEHA claims for sex-based wage discrimination raise disparate treatment and disparate impact issues that were not properly resolved by summary judgment.[6] We disagree.

■ To establish a prima facie case of disparate *treatment,* Hall was required to show membership in a protected class, qualification for the position at issue, adverse employment action, and at least an inference of intentional discrimination from facts showing that the county chose the particular policy because of its effect on members of a protected class, not just that the county was aware that a given policy would lead to adverse

---

[6] Because FEHA has a federal counterpart (title VII of the federal Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.) and the antidiscrimination objectives and public policy purpose of the two laws are the same, California's courts routinely rely on federal decisions to interpret analogous parts of FEHA. (*Heard v. Lockheed Missiles & Space Co.* (1996) 44 Cal.App.4th 1735, 1747 [52 Cal.Rptr.2d 620].)

consequences for a given group. (*Hemmings v. Tidyman's Inc.* (9th Cir. 2002) 285 F.3d 1174; *Heard v. Lockheed Missiles & Space Co., supra*, 44 Cal.App.4th at p. 1748; *Forsberg v. Pacific Northwest Bell Telephone Co.* (9th Cir. 1988) 840 F.2d 1409, 1418.) To establish a prima facie case of disparate *impact*, Hall was required to show that, regardless of the county's motive, a facially neutral practice or policy bearing no relationship to job requirements had a disproportionate adverse effect on members of the protected class. (*Carter v. CB Richard Ellis, Inc.* (2004) 122 Cal.App.4th 1313, 1321 [19 Cal.Rptr.3d 519].)

Hall did not establish a prima facie case of disparate treatment or disparate impact because she did not present any evidence to show that the county created ALS because of its effect on female lawyers (or even that the county was aware that the use of independent contractors would lead to adverse consequences for female lawyers), or any evidence to show that the creation of ALS had a disproportionate adverse effect on women.

If we nevertheless assume for the sake of argument that Hall *had* made the required showing, it was met with the county's undisputed evidence of a legitimate and gender-neutral business reason for its actions (cost savings). Hall's claim that she showed pretext is not borne out by the record. Although her expert opined (based on his statistical analysis) that "the disparity in hiring between women into ALS versus [county counsel] is so significant that it can only be explained by external factors, i.e., bias," there was no evidence that ALS's lawyers (male or female) were precluded from applying to county counsel for posted positions (it is undisputed that ALS's female lawyers did not face any barriers in applying for positions with county counsel), and no evidence to suggest that ALS's contract or compensation decisions were the result of gender bias.[7] As the trial court found, there was no evidence of pretext. (*Lang v. Kohl's Food Stores, Inc.* (7th Cir. 2000) 217 F.3d 919, 923 [identical jobs with different wages do not violate title VII if all employees may freely select which job to perform]; *Lindale v. Tokheim Corp.* (7th Cir. 1998) 145 F.3d 953, 958 [there must be a causal connection between gender and pay].)

Summary judgment was properly granted.

---

[7] The county's objections to many of the opinions offered by Hall's expert were sustained for lack of foundation, and those evidentiary rulings are not challenged on this appeal.

## DISPOSITION

The judgment is affirmed. Respondents are entitled to their costs of appeal.

Mallano, Acting P. J., and Jackson, J.,* concurred.

Appellants' petition for review by the Supreme Court was denied May 9, 2007, S151466.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.