**Bari M. DUBOWSKY, Plaintiff,**

v.

**STERN, LAVINTHAL, NORGAARD & DALY a Partnership of the State of New Jersey, Bennett M. Stern, Frederic L. Lavinthal, Edwin M. Lavinthal, Gary K. Norgaard and Joseph T. Daly, Defendants.**

**Civil Action No. 93–8 (JCL).**

United States District Court, D. New Jersey.

April 10, 1996.

Elliot M. Baumgart, Rabner, Allcorn, Baumgart, Ben–Asher & Tuckers, Upper Montclair, NJ, for Plaintiff.

Cynthia M. Jacob, David H. Gauz, Collier, Jacob & Mills, Somerset, NJ, Richard S. Panitch, Stern, Lavinthal, Norgaard & Daly, Livingston, NJ, for Defendants.

## OPINION

LIFLAND, District Judge.

Plaintiff's complaint charges defendants, her previous employer and individual partners thereof, with employment discrimination in violation of the Equal Pay Act, the New Jersey Law Against Discrimination, and the New Jersey equal pay statute. Plaintiff also brings supplemental state contract claims. Presently before the Court is defendants' motion for partial summary judgment on plaintiff's three employment discrimination claims. For the reasons set forth below, defendants' motion will be denied.

### Background

Plaintiff, an attorney, was employed by defendant law firm from February 26, 1990 through July 10, 1992. Plaintiff's Brief Ex. 1. She was hired at a yearly salary of $42,-000 and received an increase on August 12, 1991, making her yearly salary $46,200. *Id.* She voluntarily left her employment with defendant, still earning $46,200 yearly. Dubowsky Cert. ¶ 3. Her claims are based primarily on differences in salary that existed between her and various male associates of the firm during and after her tenure.

The parties have stipulated to the starting and ending employment dates, salaries and increases, and years of bar admission of the firm's associates from 1985 through 1994. *See* Plaintiff's Brief, Ex. 1 ("Chart"). Plaintiff was paid less than all other associates at the firm at all times during her employment there, with the exception of Richard Kapner, who earned $3,300 less than plaintiff from the time of plaintiff's August 1991 raise until she left the firm in July 1992. *Id.* Nor do the parties dispute that certain male associates were granted greater profit sharing on clients whose business they brought to the firm. Frederic Lavinthal Dep. 9–30–93 ("F. Lav. I") at 89, 91; Stern Dep. at 82–83. Plaintiff also contends that her raise was delayed by six months whereas males' raises were implemented in a speedy manner. Dubowsky Cert. ¶ 10–11. Defendants do not deny the delay in implementing plaintiff's pay increase but counter that other employees' raises were not implemented according

to any particular time frame. F. Lav. I at 82–83.

Defendants deny other of plaintiffs' allegations. Plaintiff claims that she was told by Frederic Lavinthal that associate Richard Panitch received a higher rate of pay because he was married and had concomitant responsibilities. Dubowsky Cert. ¶ 23. *See also* Stern Dep. at 83:23–84:7, 90:13–25 (commenting that greater profit sharing granted to male associate with young children). Defendants deny this allegation. F. Lav. I at 117. Plaintiff also swears that a partner at the firm, Bennett Stern, frequently made comments about women's "hormonal problems," and requested that she wear a short skirt to a meeting with persons from outside the firm and cross her legs so as to distract them. Dubowsky Cert. ¶ 24. She further alleges that Edwin Lavinthal encouraged her to wear short skirts and dresses (*id.* at ¶ 25), and that she overheard a partner in a meeting state that "[f]emales are cheaper than males." Dubowsky Dep. 3–10–94 at 98, 116–17, 123. Furthermore, plaintiff claims that she was never invited to lunch by the partners, who were all male, whereas the male associates were regularly invited. Dubowsky Cert. ¶ 26.

In summary, defendants testify that they had no set criteria for establishing salaries. *See, e.g.,* Stern Dep. at 25:16–17. Salary decisions were made in meetings of the entire partnership. F. Lav. I at 7, 31. Testimony of various partners presents inconsistent accounts of important salary setting criteria, reflecting that defendants themselves do not agree as to the basis of the salaries they paid. Testimony from the partners refers to pedigree (F. Lav. I at 19–23), longevity at the bar (F. Lav. I at 83, 107), prior experience, references, previous salary, and other factors. F. Lavinthal Dep. 3–9–94 ("F. Lav. II") at 59–60. However, there is also testimony from various partners, and sometimes from the same partners, that these were not important factors. F. Lav. II at 59 (longevity at bar not important); Stern Dep. at 49 (previous salary not important). Overall, defendants have testified that each potential associate was evaluated on his or her own merits (F. Lav. I at

104), without comparison to other associates at the firm, and that the firm then offered whatever it thought the employee was worth. Stern Dep. at 25–27, F. Lav. II at 59. In the words of defendant Stern: "We don't have guidelines. I mean there's no measure." Stern Dep. at 27:17–19.

## Defendants' Motion for Partial Summary Judgment

Defendants move for partial summary judgment. Rule 56(c) of the Federal Rules of Civil Procedure directs a district court to grant summary judgment:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The burden of showing that no genuine issue of material fact exists rests initially with the moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986). If the moving party shows that there is an absence of evidence to support the non-moving party's case, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Fed.R.Civ.P.* 56(e); *Celotex,* 477 U.S. at 323–25, 106 S.Ct. at 2552–54; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The non-moving party may establish that the case presents a genuine issue for trial by showing that there is sufficient evidence favoring the non-moving party to enable a reasonable fact finder to return a verdict in that party's favor. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510. In evaluating a motion for summary judgment, the court must view the facts, and the reasonable inferences therefrom, in the light most favorable to the non-moving party. *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).

## Plaintiff's Equal Pay Act Claim

Plaintiff claims that defendants paid her less than male employees for substantially equal work on account of her gender, in violation of the Equal Pay Act

("EPA"). 29 U.S.C. § 206(d)(1). In order to establish a *prima facie* case under the EPA, plaintiff must show that:

> an employer pays different wages to employees of opposite sexes for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.

*Corning Glass Works v. Brennan,* 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974) (citation omitted); *see also Brobst v. Columbus Services Int'l,* 824 F.2d 271, 274 (3d Cir.1987), *cert. denied,* 484 U.S. 1043, 108 S.Ct. 777, 98 L.Ed.2d 863 (1988); 29 U.S.C. § 206(d)(1) (1987). The claimant must show that she and the male comparator(s) were paid unequally for "substantially equal" work, that is "work of substantially equal skill, effort and responsibility, under similar working conditions." *E.E.O.C. v. State of Del. Dept. of Health and Social Services,* 865 F.2d 1408, 1413–14 (3d Cir.1989). The main determining factor in the "substantial equality" of the jobs is whether the jobs involve "a common core of tasks." Factors to be considered in determining whether tasks are similar include whether they require similar quality and quantity of production, education, relevant prior work experience, conduct and skill. 29 C.F.R. § 1620.13.

■ For purposes of establishing a *prima facie* case, it is the jobs, and not the individuals who held the jobs, that the Court must compare. *See Mulhall v. Advance Sec., Inc.,* 19 F.3d 586, 592 (11th Cir.1994), *cert. denied,* ── U.S. ──, 115 S.Ct. 298, 130 L.Ed.2d 212 (1994). Plaintiff need only establish that she was paid differentially because of her sex with respect to a single male employee to prove her EPA claim. *See Mulhall,* 19 F.3d at 590, *citing, Mitchell v. Jefferson County Bd. of Ed.,* 936 F.2d 539, 547 (11th Cir.1991).

■ If plaintiff establishes a *prima facie* case, the burden of persuasion shifts to defendants to establish one of four exceptions under the EPA. 29 U.S.C. § 206(d)(1). The employer may exempt itself from liability only by showing that the differential payments were made pursuant to: (1) a seniority system, (2) a merit system, (3) a system which measures earnings by quantity or quality of production, or (4) a differential based on any factor other than sex. *Id.* Acceptable factors other than sex include education, experience, prior salary, or any other factor related to performance of the job. At this stage of the analysis, in contrast with the *prima facie* stage, it is appropriate to compare the employees who filled the jobs, inasmuch as the differences in their qualifications related to the jobs they performed.

■ If defendants succeed in proving an affirmative defense, plaintiff may still prove her case by establishing that the nondiscriminatory justification offered by the defendants is a pretext for discrimination. *E.E.O.C.,* 865 F.2d at 1414, n. 8. Plaintiff need not prove that defendants intentionally discriminated against her. *Id.; Mitchell,* 936 F.2d at 547. However, proof of discriminatory intent would serve as evidence that the employer's espoused non-discriminatory explanation is pretextual. *E.E.O.C.,* 865 F.2d at 1414, n. 8.

Thus, by moving for summary judgment under the EPA, defendants thrust before the Court for scrutiny not only the merits of plaintiff's evidence, but the strength of their own defense, and must establish that there is an absence of any issue for jury resolution. *Mulhall,* 19 F.3d at 594.

*Plaintiff's Prima Facie Case*

*Unequal Pay*

Plaintiff utilizes three different Stern, Lavinthal associates as comparators for purposes of her EPA claim: Marc Alster, Richard Panitch, and Daniel Nider. There is no dispute that all three earned more money than plaintiff. *See* Chart.

■ Defendants ask the Court to compare all of their associates' salaries and tenures at the bar, in an attempt to show that the associates' salaries, on the whole, were "all over the lot." In an EPA case, however, it is entirely appropriate for plaintiff to compare herself to individual male employees. *See, e.g., Mulhall,* 19 F.3d at 596. Plaintiff need not establish a pattern and practice of sex discrimination. To the contrary, she need only establish that she was paid less than a single male employee for equal work

on the basis of sex to prevail on her claim. *See Mulhall,* 19 F.3d at 590, *citing, Mitchell,* 936 F.2d at 547. As the parties agree that plaintiff was paid less than her male co-workers, the Court must determine if the record evidences a dispute as to the substantial equality of the jobs performed by plaintiff and her comparators.

### Substantially Equal Jobs

### Daniel Nider

■ Daniel Nider replaced plaintiff after she left the firm in 1992. Defendants admit that Nider took over plaintiff's responsibilities and that their jobs were therefore substantially equal. Defendants' Brief in Support at 16, n. 5.

However, relying upon *Bielawski v. AMI, Inc.,* 870 F.Supp. 771, 775–76 (N.D.Ohio 1994), defendants contend that, as a matter of law, plaintiff may not establish her *prima facie* case by showing that her successor was paid more than she. *Bielawski* holds that an EPA claimant may not rely on the salary of her successor because (1) inflationary forces should be expected to cause a successor's salary to be higher than his predecessor's, and (2) § 206(d)(1) is written in the present tense, indicating that claimants should be compared to contemporary employees. *Id.* However, *Bielawski* acknowledges that the statute does apply when a claimant is paid less than her predecessor, which casts some doubt on the reliability of a strictly literal reading of the statute. *Id.*

In contrast with *Bielawski,* several courts have held that a plaintiff may establish her EPA case by comparing herself to her successor in a job. *See Taylor v. Philips Industries, Inc.,* 593 F.2d 783 (7th Cir.1979); *Moseley v. Kellwood Co.,* 1981 WL 307, *10 (E.D.Mo.1981), *citing, Strecker v. Grand Forks County Social Service Bd.,* 640 F.2d 96 (8th Cir.1980), *implicitly overruled on other grounds, Pullman–Standard v. Swint,* 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982). The Court has not discovered Third Circuit precedent on this issue.

Nider took plaintiff's position roughly five months after she left the firm, at a salary roughly twenty percent higher than plaintiff was earning at the time of her departure. Inflationary forces, the concern of the *Bielawski* court, are not a logical explanation for this salary differential. The weight of the existing authority, as well as the better logic, convince this Court to permit plaintiff to establish her *prima facie* case through comparison with Nider, her successor. Therefore, defendants have failed to prove, on the undisputed facts, that they are entitled to judgment as a matter of law that plaintiff cannot make out a *prima facie* case through comparison with Nider.

### Alster and Panitch

■ Plaintiff also compares herself to former Stern, Lavinthal associates Marc Alster and Richard Panitch. Defendants argue that the undisputed facts show that the jobs performed by Alster and Panitch were not substantially equal to plaintiff's job. No dispute of material fact exists as to what work was performed by plaintiff, Alster and Panitch. Dubowsky's work at the firm was primarily transactional, but she also participated in a substantial amount of litigation or litigation-related work, including supervision and management of local counsel in a multi-state litigation matter. Dubowsky Cert. Ex. B, Stern Dep. at 73:8–12, 77:10. Alster and Panitch, on the other hand, were strictly commercial litigators. F. Lav. I at 81, 100–101. Plaintiff and the comparators reported primarily to different partners of the firm. F. Lav. I at 65, 80, 123.

The three were expected to bill the same number of hours. F. Lav. I at 68:9–13, F. Lav. II at 43:11–17. Dubowski's billing rate was higher than that of the comparators because the comparators worked for high-volume clients who enjoyed discounted rates. F. Lav. II at 25:7–15, 30:14–18, 33:18–21; F. Lav. I at 68:20–22. All three frequently worked under time pressure. F. Lav. I at 110–12. All clients' work was considered equally important by the firm. Stern Dep. at 124. These facts could allow a reasonable jury to determine that the work performed by plaintiff and comparators required substantially similar responsibility, skill and effort.

Furthermore, defendants have failed to show that it is beyond dispute that the conditions under which plaintiff and comparators worked were dissimilar. Defendants' testimony establishes that plaintiff was required to work the same hours as comparators (F. Lav. I at 68, F. Lav. II at 43), and she frequently worked under time pressure, just as they did. F. Lav. I at 110–12. Defendants argue that the litigators' jobs were substantially different from plaintiff's because comparators were required to answer to both clients and the courts, creating greater stress and pressure. However, Frederic Lavinthal testified at deposition that the transactional work performed by plaintiff involved "its own set of pressures" and involved deadlines, late hours and weekend work. *See id.;* Baugmart Cert. Ex. C.

Defendants also argue that the undisputed fact that plaintiff's work was primarily transactional whereas comparators' work was primarily litigation-related entitles them to judgment as a matter of law that plaintiff's and comparators' jobs were not substantially equal. Defendants cite a series of cases finding that lawyers working for the same firm or corporation did not perform substantially equal jobs. However, upon review, the Court finds that all of these cases are factually distinct from the case at bar. For instance, *Graham v. Texasgulf, Inc.,* 662 F.Supp. 1451 (D.Conn.1987), *aff'd w/o op.,* 842 F.2d 1287 (2d Cir.1988), involved a female lawyer who was dismissed during a period of extensive staff reductions. After trial, the court found that the job plaintiff performed as one of several "general counsel" for her corporate employer was not substantially similar to that performed by other lawyers in the department. Details of the plaintiff's and comparators' jobs are not provided. The Court declines to interpret the finding in *Graham,* made after full exposition of the evidence at trial, to state a *per se* rule that lawyers performing somewhat distinct responsibilities do not have substantially equal jobs for purposes of the EPA.

Nor does *Byrd v. Ronayne,* 61 F.3d 1026 (1st Cir.1995), state such a rule. The court in *Byrd* upheld summary judgment in favor of defendant law firm against the female plaintiff, a former senior associate, who compared herself to a male "of counsel" attorney at the firm. The court based its judgment on a total absence of evidence about the tasks involved in plaintiff's job, noting that plaintiff attempted to establish her *prima facie* case by comparing her qualifications with those of the comparator, rather than her job duties with his. Far from suggesting that lawyers' jobs are inherently un-comparable, *Byrd* simply finds that in that case, plaintiff did not provide the court with the detailed information necessary to make the comparison.

*Moseley v. Kellwood Co.,* 1981 WL 307 (E.D.Mo.1981), is also distinguishable. *Moseley* made a careful comparison between the work done by the female attorney plaintiff and male attorney comparator within a corporate law department. The court found that plaintiff spent a great deal of her time on fact-specific litigation, requiring less legal sophistication than the work performed by the comparator, and that she practiced at a beginner's level whereas comparator's practice was more advanced and involved a broader range of activities requiring a greater diversity of skills. Defendants have failed to establish beyond dispute that such a dramatic disparity existed between the skill levels required of plaintiff and Alster and Panitch.

Finally, in *Vanek v. Nutrasweet Co.,* 1993 WL 535209 (N.D.Ill.1993) and *Horner v. Mary Institute,* 613 F.2d 706, 714 (8th Cir. 1980), defendants prevailed because comparators shouldered significantly greater responsibilities towards their employers than plaintiffs in those cases. Here, the record contains evidence that all files handled by the firm were equally important (Stern Dep. at 124), indicating that this case may be considered by a jury to be factually different from *Vanek* and *Horner.*

The *Mulhall* case, 19 F.3d at 595, presents facts more similar to the facts before this Court. In *Mulhall,* plaintiff was a high-ranking manager for a security provider. The comparator's job consisted of diverse components, similar to the *Mulhall* plaintiff's responsibilities, except that one job was focused on employee management and the oth-

er on money management. The court found that the jobs were substantially similar, primarily because they involved substantially equal responsibility based on their differently balanced cores of common tasks. *Mulhall* establishes that overlapping jobs need not have the same balance of content in order to be "substantially similar" under the EPA. *Id.*

The cases relied upon by defendants fail to convince the Court that defendants are entitled to summary judgment as a matter of law. Although plaintiff's job required some different skills than those of Alster and Panitch, the record does not establish beyond dispute that the degree of skill required by the jobs was significantly different. *See Coe v. Cascade Wood Components, Inc.*, 48 FEP 664, 1988 WL 125893 (D.Or.1988) (skills required may be different in substance but must be equal in degree).

On review of the entire record, defendants have failed to demonstrate an absence of dispute as to the degree of skill, effort and responsibility required by the jobs performed by Alster, Panitch and plaintiff. Nor have defendants directed the Court's attention to undisputed facts indicating that the three worked under different conditions. Summary judgment is therefore inappropriate.

### Defendants' Affirmative Defenses

 Once an EPA plaintiff makes out her *prima facie* case, the burden of persuasion shifts to the defendants to prove by a preponderance of the evidence one of the affirmative defenses permitted by the Equal Pay Act. Defendants' burden is a heavy one, far exceeding the burden of articulation born by a defendant to a Title VII action, as the burden of persuasion under Title VII remains always with the plaintiff. *Compare Mulhall*, 19 F.3d at 590–91 *and St. Mary's Honor Center v. Hicks*, 509 U.S. 502, ——, 113 S.Ct. 2742, 2754, 125 L.Ed.2d 407 (1993). Indeed, defendants must prove that the factor of sex provided no basis for the wage differential. *Mulhall*, 19 F.3d at 590. Defendants argue that the differences between plaintiff's salary and those earned by Nider, Alster and Panitch were based on factors other than sex, the fourth rebuttal category

presented by the statute. 29 U.S.C. § 206(d)(1).

### Market Forces Defense

 Defendants first claim that market forces drove the salaries paid to plaintiff and comparators. Defendants rely on *Stanley v. University of S. Cal.*, 13 F.3d 1313, 1322 (9th Cir.1994), holding that "[u]nequal wages that reflect market conditions of supply and demand are not prohibited by the EPA." In evaluating this defense, the Court will bear in mind the *Stanley* court's clarification that "[a]n employer may consider the marketplace value of the *skills* of a particular individual when determining his or her salary." *Citing Horner v. Mary Institute*, 613 F.2d at 709. It is not legitimate under the EPA to pay an equally qualified woman less than a man because of her inferior bargaining power in the market *as a woman. See Ottaviani v. State Univ. of New York*, 679 F.Supp. 288, 338 (S.D.N.Y.1988), *aff'd*, 875 F.2d 365 (2d Cir.1989), *cert. denied*, 493 U.S. 1021, 110 S.Ct. 721, 107 L.Ed.2d 740 (1990). A court should not accept a "market forces" defense unless the employer can rationally explain the use of market information. *See Chang v. University of Rhode Island*, 606 F.Supp. 1161, 1229 (D.R.I.1985). Previous salary is a legitimate consideration when determining the market value of an individual's skills. *See Tornow v. University of N.C.*, 57 FEP Cases (BNA) 1313, 1315, 1991 WL 354883 (M.D.N.C.1991), *aff'd*, 977 F.2d 574 (4th Cir.1992).

 Defendants contend that a "market forces" defense may include an employer's relative desire to hire a particular individual. They cite *Ottaviani*, 679 F.Supp. at 336–37, where the court referred to the employer's "strong desire to hire" a particular male employee as one legitimate factor explaining a wage differential between him and female employees. However, the market forces defense may not be used as a disguise for employment decisions based on a belief that women generally come more cheaply than men. Therefore, while an employer may in general vary salaries based on relative desire to hire a particular individual, this practice runs afoul of the EPA if that desire is moti-

vated by the prospective employee's gender. If the employer offers a high salary to a young lawyer because it thinks this lawyer has great potential, in part because he is a man, this would violate the EPA. As the court in *Moseley* held, 1981 WL 307 at *11, an employer can pay more if necessary to get the man who is the best person for the job, but may not pay women less merely because the employer believes they are willing to work for less money.

■ In support of this defense, defendants assert the following undisputed facts: (1) before hiring plaintiff, defendant firm attempted to hire another female, but was not able to meet her salary demand (F. Lav. I at 48), (2) plaintiff's salary at the firm was a significant increase over her salary at her previous job, and (3) plaintiff accepted the salary the firm offered. Finally, defendants have submitted a *New Jersey Law Journal* article stating that large New Jersey law firms were limiting their raises to new classes of associates.

■ The undisputed facts now before the Court do not establish that defendants are entitled to judgment as a matter of law on their market forces defense. The fact that defendants were unwilling to pay another woman more than they paid plaintiff certainly does not show that they paid Nider, Alster and Panitch more because the market demanded more for their skills than for plaintiff's. Nor does plaintiff's previous salary explain the discrepancy, as defendants have not established beyond dispute that plaintiff's previous salary was unrelated to her status as a woman in the marketplace or that her previous salary accurately reflected the value of her skills in the marketplace.

■ Nor does plaintiff's acceptance of the job prove that defendants did not set her salary on the basis of gender. The case law specifically warns against granting a market forces defense based on the fact the an employer pays women less because they believe they will work for less, or because women have inferior bargaining power, as women, in the market place. Indeed, if plaintiff's acceptance of the lower-paying job were a defense, no woman would ever be able to estab-

lish an EPA claim with respect to a job she actually held.

Finally, the newspaper article offered by defendants is inadmissible hearsay. Even if admissible, the article does not rationally explain the effect of market forces on salary decisions at Stern, Lavinthal. Therefore, this article is irrelevant to this Court's decision.

Accordingly, the Court declines to find, on the undisputed facts, that defendants are entitled to judgment as a matter of law based on their market forces defense.

*Non–Discriminatory Criteria: Background, Training and Experience*

■ At oral argument, counsel for defendants argued that plaintiff was paid less than comparators because she required training by Frederic Lavinthal in order to perform her job. This contention is unsupported by the record. Counsel apparently relied upon Frederic Lavinthal's response at deposition to the question: "What were you really looking for in the person that was filling this position?" F. Lav. I at 49. Lavinthal stated that he was seeking "[s]omebody who had some transactional background, who was capable of writing well, and who I could train to do the work or assist in doing the work that I do." *Id.* This statement does not address plaintiff's qualifications, but rather expresses that, before hiring plaintiff, Lavinthal entertained the possibility of hiring a person who required training. Furthermore, defendants' contention based on this statement is unsupported by any evidence indicating that plaintiff actually did require more training than associates who received higher salaries than she. Therefore, the Court finds that the record does not establish, beyond dispute, that plaintiff, as opposed to comparators, required significant training in order to perform her job duties.

The Court next considers the other arguments presented by defendants in support of their contention that the salary discrepancies were due to differences in background, training and experience of plaintiff and the comparators.

### Alster

■ Defendants argue that Alster was hired at a higher rate than plaintiff because he was an experienced litigator, had experience as in-house counsel to a mortgage lender, a practice area that Stern, Lavinthal emphasizes, and that he was "quick, fast on his feet, got good results, and was a hard worker." F. Lav. I at 87:14–17. They also assert that Alster filled a particular need of the firm because he came in the wake of the departure of a litigation partner.

Defendants assert that they did not compare Alster to plaintiff when setting plaintiff's salary, and they do not compare the qualifications of the two in their brief. The fact that the two were not compared at the time of hire is not a defense to an EPA claim, as plaintiff need not prove intent to discriminate. *See E.E.O.C.,* 865 F.2d at 1414, n. 8.

Despite defendants' unwillingness to compare plaintiff and Alster, such comparison is required by the EPA inquiry. Plaintiff was admitted to the bar six months earlier than Alster. Alster has sworn to the following litigation experience:

> [At my previous job], the focus of my practice ... was the enforcement of mortgagee's rights, and primarily encompassed representing the company in foreclosure and bankruptcy matters.
>
> By far the greatest portion of the time I spent in court on behalf of Rolls was on motion practice. My actual "trial experience" during the one year of my employment there consisted of two or three very short bench trials, none of which lasted longer than one day.
>
> Prior to joining Rolls ... I tried one matter in the Chancery Division. The trial lasted five days. I never tried a case to a jury *prior* to, or during, the time I worked at Stern Lavinthal, although I had engaged in pre-trial activities and preparation for the same.

Alster Cert. ¶¶ 6–8. Plaintiff's experience included:

> expertise in both transactional and litigation areas, including legal research and analysis, litigation and settlement of commercial, corporate, real estate, environmental, administrative, matrimonial, regulatory, and financial matters and the drafting, negotiation, and closing or settlement of commercial, corporate, real estate, and financial transactions. The litigation I handled entailed numerous court appearances.

Dubowsky Cert. ¶ 5. Given these facts, a reasonable jury could find in favor of plaintiff, by determining that Alster was not significantly more experienced in litigation than plaintiff. Therefore, defendants have failed to demonstrate an absence of dispute of fact as to their affirmative defense based on the comparability of plaintiff's and Alster's qualifications.

### Panitch

Mr. Panitch was hired in 1991 for $3,800 more per year than plaintiff. Plaintiff was admitted to the bar two years before Panitch. Defendants do not direct the Court's attention to any evidence in the record showing that Panitch's experience or qualifications justified his higher salary. Indeed, the only testimony presented by defendants on this issue is Frederic Lavinthal's comment at deposition that comparing the two "is like comparing an apple and an onion." F. Lav. Dep. I at 117:9–12. This does not establish beyond dispute that defendants' salary decisions were not influenced by the gender of their employees. As defendants have failed to demonstrate an absence of dispute as to their defense that plaintiff and Panitch possessed significantly different background, training and experience, summary judgment will not enter in their favor on their affirmative defense based on plaintiff's comparison with Panitch.

### Nider

■ Nider was hired for $13,800 more than plaintiff was earning at the time of her departure from the firm. Mr. Nider came to the firm with two years more experience at the bar than plaintiff had upon her departure. Frederic Lavinthal testified that this was the primary factor in setting Nider's salary, along with his prior work experience, type and breadth of experience, and "willingness to expand his horizons" by taking on additional litigation work. F. Lav. I at 83–

996

86. While two additional years at the bar could indicate that Nider had significantly more experience than plaintiff, the record as a whole, viewed in the light most favorable to plaintiff, precludes summary judgment as to this affirmative defense. In particular, the record reflects that plaintiff was paid less than Panitch despite the fact that her tenure at the bar exceeded his by two years. Furthermore, the record shows that tenure at the bar does not correlate in general with salaries paid by Stern, Lavinthal. *See* Chart. Accordingly, the Court finds that a reasonable jury could determine that defendants' reliance upon Nider's additional two years at the bar fails to persuade them that sex played no role in Stern, Lavinthal's salary decisions regarding plaintiff and Nider. Consequently, summary judgment will not enter based on this affirmative defense.

*Pretext*

■ Plaintiff may prevail on her EPA claim, notwithstanding defendants' success on its affirmative defenses, if she can establish that the non-discriminatory reasons presented by defendants are pretextual. As the Court has already determined that defendants' defenses do not justify summary judgment in their favor, it need not reach this stage of the EPA analysis in order to determine that it will not grant defendants' summary judgment motion.

**The New Jersey Law Against Discrimination (NJLAD)**

■ Defendants seek summary judgment in their favor on plaintiff's NJLAD claim. In order to show a violation of the NJLAD, plaintiff must establish that defendants violated the EPA, or that they intentionally discriminated against plaintiff. *Grigoletti v. Ortho Pharmaceutical Corp.,* 118 N.J. 89, 109–10, 570 A.2d 903 (N.J.1990). The Court has already determined that summary judgment in favor of defendants on plaintiff's EPA claim cannot enter on this record. Accordingly, defendants are not entitled to summary judgment on plaintiff's NJLAD claim.

**New Jersey Equal Pay Act**

■ Defendants also seek summary judgment on plaintiff's claim pursuant to N.J.S.A. § 34:11–56.2, prohibiting gender-based discrimination in wages:

No employer shall discriminate in any way in the rate or method of payment of wages to any employee because of his or her sex. A differential in pay between employees based on a reasonable factor or factors other than sex shall not constitute discrimination within the meaning of this section.

*Id.* While the New Jersey Equal Pay Act was passed over four decades ago, it has infrequently been sued upon. The New Jersey Supreme Court has explained that:

[a]lthough the statute has remained dormant, that is explained in part by the circumstances that other legislative schemes have been invoked to supplement its protective measures and assure its societal goals. Still, it exemplifies an enduring legislative policy that is protective of the interest and status of women in the employment setting. The legislature's desire to protect women against sex-based wage discrimination, which led to the enactment of the State's EPA in 1952, was reaffirmed by the 1970 amendment to the LAD, which added to the statute protections against discrimination based on marital status or sex. Thus the goals and policy of the EPA are mirrored in the LAD.

*Grigoletti,* 118 N.J. at 106. Notwithstanding its infrequent use, section 34:11–56.8 of the Act provides a private right of action to enforce section 34:11–56.2. As explained above in relation to plaintiff's EPA claim, defendants have failed to demonstrate that there is no dispute of material fact, or that they are entitled to judgment as a matter of law, that they did not pay plaintiff less than similarly-situated males on the basis of sex. Accordingly, summary judgment in favor of defendants will not enter on plaintiff's New Jersey Equal Pay Act claim.