Filed 9/20/22; certified for partial publication 10/18/22 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| JOYCE ALLEN,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>STAPLES, INC., et al.,<br><br>    Defendants and Respondents. | B311426<br><br>(Los Angeles County Super. Ct. No. 19STCV08311) |

APPEAL from a judgment of the Superior Court of the County of Los Angeles, Michael P. Linfield, Judge. Reversed and remanded with instructions.

Hannemann Law Firm, Brian G. Hannemann, McNally Law Firm, Bryan L. McNally, and Kathleen Doherty, for Plaintiff and Appellant.

Littler Mendelson, Brandie N. Charles and Michelle Marie Holmes, for Defendants and Respondents.

# I.    INTRODUCTION

The trial court granted summary judgment in favor of defendants[1] on plaintiff Joyce Allen's complaint for wrongful termination and violations of the Equal Pay Act (EPA; Lab. Code § 1197.5 (section 1197.5)) and the Fair Employment and Housing Act (FEHA; Gov. Code § 12940 et seq.).  On appeal, plaintiff contends that reversal is warranted because her evidence raised triable issues on each of her claims.  We reverse the judgment and remand with instructions.

# II.    FACTUAL BACKGROUND[2]

Plaintiff began working for Staples in October 2006 as a sales representative.  In March 2015, she took a position as an outside facilities area sales manager (ASM), a position she held until June 2017.  As an ASM, plaintiff "oversaw a team of [s]ales [r]epresentatives who were responsible for contracting with [business customers and] overseeing[] and managing client relationships and business sales of Staples products."  Narlock, a field sales director (FSD), supervised plaintiff and the other ASMs in the Pacific region during the time plaintiff held the position.

---

[1]    The defendants are Staples, Inc. (the parent), Staples Contract & Commercial, LLC (Staples), and Charles R. Narlock (Narlock).

[2]    We summarize here the undisputed background facts to lend context to the discussion of the issues that follows.  The facts specific to each claim are detailed in the section addressing it.

In June or July 2017, plaintiff became a FSD. In that position, she reported to area sales vice president Bruce Trahey, as did fellow FSD Narlock. In February 2019, as part of a corporate reorganization, Trahey informed plaintiff and several other FSDs of his decision to eliminate their positions and terminate their employment.

## III. PROCEDURAL BACKGROUND

In March 2019, plaintiff filed her complaint asserting six causes of action against Staples and the parent[3] for: violation of the EPA (first cause of action); gender discrimination under FEHA (second cause of action); sexual harassment under FEHA (third cause of action); failure to prevent discrimination and harassment under FEHA (fourth cause of action); retaliation under FEHA (fifth cause of action); and wrongful termination in violation of public policy (seventh cause of action). Plaintiff attached the administrative complaint she filed with the Department of Fair Employment and Housing (DFEH) to her civil complaint.

In February 2020, defendants filed their motion for summary judgment or, in the alternative, summary adjudication of issues and supporting papers and evidence. Plaintiff opposed

---

[3] The first and third causes of action were also asserted against Narlock and Charisse Clay (Clay), individually, and the sixth cause of action for sexual assault and battery was asserted only against Clay. On October 15, 2020, prior to the hearing on defendants' summary judgment motion, plaintiff voluntarily dismissed her claims against Clay, and she is not a party to this appeal.

3

the motion, supported by her declaration, and also filed objections to defendants' evidence. Defendants then replied and filed objections to plaintiff's declaration.

On January 21, 2021, the trial court held a hearing on defendants' motion and issued a minute order in which it sustained the majority of defendants' objections to plaintiff's declaration[4] and granted both summary judgment and, in the alternative, summary adjudication on each cause of action.

On February 8, 2021, the trial court entered a judgment in favor of defendants. On March 17, 2021, plaintiff filed a timely notice of appeal.

## IV. DISCUSSION

### A. *Standard of Review*

"""A trial court properly grants a motion for summary judgment only if no issues of triable fact appear and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); see also *id*., § 437c, subd. (f) [summary adjudication of issues].)""" (*State of California v. Allstate Ins. Co.* (2009) 45 Cal.4th 1008, 1017.) "We review the trial court's decision [on a summary judgment motion] de novo, considering all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the

---

[4] On appeal, plaintiff does not challenge the court's rulings on the objections to her declaration. We therefore do not consider the matters in that declaration as to which objections were sustained. (*Merrill v. Navegar, Inc*. (2001) 26 Cal.4th 465, 476.)

4

uncontradicted inferences the evidence reasonably supports. [Citation.]" (*Merrill v. Navegar, Inc., supra*, 26 Cal.4th at p. 476.)

"[I]n moving for summary judgment, a 'defendant . . . has met' his 'burden of showing that a cause of action has no merit if' he 'has shown that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to that cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto. The plaintiff . . . may not rely upon the mere allegations or denials' of his 'pleadings to show that a triable issue of material fact exists but, instead,' must 'set forth the specific facts showing that a triable issue of material fact exists as to that cause of action or a defense thereto.' (Code Civ. Proc., § 437c, subd. (o)(2).)" (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849 (*Aguilar*).)

B.      *First Cause of Action:  Violation of EPA*

Plaintiff challenges the trial court's conclusion that she failed to make a prima facie case on her EPA claim, arguing that her evidence showing the pay disparity between her starting salary, as both an ASM and a FSD, and Narlock's salary when he started at those positions constituted the requisite prima facie showing on the elements of that claim against Staples. We agree.

1.      Background

During plaintiff's employment, Staples's employees received annual salaries based on the grade assigned to their job

position. Each grade had a corresponding salary range; the specific salary an employee would receive within a grade range was determined by several factors, including time with the company, number of years in the position, and performance.

When plaintiff became an ASM in March 2015, it was a grade 37 job position with an annual salary range between $65,000 and $135,000.[5] Staples set her base salary at $84,999.96[6] and increased it to $86,912.46 in April 2017.

Narlock, who was an ASM before being promoted to a FSD, had a base salary in grade 37 of $107,698.86. That was approximately $22,000 more in base salary than Staples paid plaintiff when she started in the position.

During the period that plaintiff held her ASM position, there were two other ASMs in California, a man who earned between $109,999.76 and $111,099.76 and a woman who earned between $124,071.81 and $127,818.78. Although Staples had fewer ASMs who were women than men in the United States during that period, women were among the highest earning ASMs. And, at least six men earned less than plaintiff.

In July 2017, when plaintiff became a FSD, it was a grade 38 position with an annual salary range between $80,000 and $160,000. Plaintiff's annual base salary in that position was set at $86,912.46, the same salary she had been earning as an ASM,

---

[5] In addition to their annual base salary, ASMs, including plaintiff, received monthly commissions pursuant to an ASM commission plan.

[6] There is no evidence in the record concerning the person or persons at Staples responsible for determining the amount of plaintiff's salary as either an ASM or a FSM.

and it remained at that rate until her February 2019 termination.

Narlock's base salary in his grade 38 FSD position was $135,000—$48,087.54 more than plaintiff's FSD base salary. In May 2016, Narlock's base salary increased to $140,451, the amount he was making when plaintiff became an FSD in June 2017.

The salary data for FSD employees during the time plaintiff held the position showed fewer women than men in that position. But at least five of those women earned more in base salary than several of the men. And, at least three men earned less in base salary than plaintiff.

### 2. Legal Principles

"Section 1197.5 is California's equal pay law. Its operative subsection states: 'No employer shall pay any individual in the employer's employ at wage rates less than the rates paid to employees of the opposite sex in the same establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where the payment is made pursuant to a seniority system, a merit system, a system which measures earnings by quantity or quality of production, or a differential based on any bona fide factor other than sex.' (§ 1197.5, subd. (a).)" (*Green v. Par Pools, Inc.* (2003) 111 Cal.App.4th 620, 622–623.)

To prove a prima facie case of wage discrimination, "a plaintiff must establish that, based on gender, the employer pays different wages to employees doing substantially similar work

under substantially similar conditions. [Footnote omitted.]" (*Hall v. County of Los Angeles* (2007) 148 Cal.App.4th 318, 323.) "If that prima facie showing is made, the burden shifts to the employer to prove the disparity is permitted by one of the EPA's [four] statutory exceptions—[such as,] that the disparity is based on a factor other than sex." (*Id*. at pp. 323–324.) But a plaintiff must show "not only that she [was] paid lower wages than a male comparator for equal work, but that she has selected the proper comparator." (*Id*. at p. 324.) "The [EPA] does not prohibit variations in wages; it prohibits *discriminatory* variations in wages. . . . [Accordingly,] 'a comparison to a specifically chosen employee should be scrutinized closely to determine its usefulness.'" (*Hein v. Oregon College of Education* (1983) 718 F.2d 910, 916.)[7]

3.     Analysis

     a.     Staples[8]

Staples's evidence in support of its summary adjudication motion on the EPA claim showed that female ASMs were paid more, on average, than men were paid and that some male ASMs and FSDs were paid lower salaries than plaintiff. According to

---

[7]     "[I]n the absence of California authority, it is appropriate to rely on federal authorities construing the federal [Equal Pay Act (EPA); 29 U.S.C. § 206(d)(1)] . . . ." (*Green v. Par Pools, Inc., supra*, 111 Cal.App.4th at p. 623.)

[8]     It is undisputed that Staples was plaintiff's employer under the EPA.

8

Staples, that undisputed evidence established that it did not pay males more than it paid females in similar positions.  In response, plaintiff highlighted Staples's evidence showing that Narlock—an appropriate male comparator in the Pacific region—was paid more in base salary, as both an ASM and a FSD, than she was paid in those positions.

Authorities under the federal EPA have held that a plaintiff claiming gender-based pay disparity may establish a prima facie case by showing that she was paid less in salary than a single male comparator.  (See *Dubowsky v. Stern, Lavinthal, Norgaard & Daly* (1996) 922 F.Supp. 985, 990 ["[The p]laintiff need only establish that she was paid differentially because of her sex with respect to a single male employee to prove her [federal] EPA claim.  [Citations.]".)  Thus, plaintiff's evidence—that she was paid $22,000 less in base salary than Narlock as an ASM and $48,000 less in base salary than him as a FSD—was sufficient to carry her initial burden on her EPA claim and shift to Staples the burden of showing there was no triable issue of fact on one of the four exceptions to that claim.

Staples argues that the salary differentials between Narlock and plaintiff are explained by bona fide factors other than gender, namely, Narlock's time with the company and his experience before taking both positions.  But Staples's evidence showed only that, as a general practice, it set salaries based on factors such as seniority, years of experience in a given position, and merit.  It did not set forth the specific factors on which Narlock's base salary, in either position, was premised or the factors on which plaintiff's base salaries were premised.  Absent such evidence, Staples failed to establish that there was no triable issue of fact on its "other bona fide factors" defense.  The

trial court therefore erred in granting summary adjudication in favor of Staples on that claim.[9]

> b.    The Parent

Plaintiff argues that there is a triable issue of material fact as to whether the parent is liable for the alleged EPA violations because it was also her employer under the "single employer doctrine" and the related "integrated enterprise" test.  According to plaintiff, the parent had the initial burden to set forth evidence under the integrated enterprise test showing that it was not her employer and it failed to carry that burden.

"The federal courts have developed a test, derived from federal labor case law, to determine whether two corporations should be considered a single employer for title VII purposes. Commonly called the 'integrated enterprise' test, it has four factors:  interrelation of operations, common management, centralized control of labor relations, and common ownership or financial control." (*Laird v. Capital Cities/ABC, Inc.* (1998) 68 Cal.App.4th 727, 737, fn. omitted.)  But, "[a]n employee who seeks to hold a parent corporation liable for the acts or omissions of its subsidiary on the theory that the two corporate entities constitute a single employer has a heavy burden to meet under both California and federal law.  Corporate entities are presumed

---

[9]    Plaintiff does not challenge the trial court's granting of summary adjudication as to her claim for punitive damages on her EPA claim, i.e., she does not contend that Staples acted with fraud, oppression, or malice in setting her base salaries.  We therefore do not consider this issue further.

to have separate existences, and the corporate form will be disregarded only when the ends of justice require this result. [Citations.] In particular, there is a strong presumption that a parent company is not the employer of its subsidiary's employees. [Citation.]" (*Ibid*.)

Plaintiff's complaint alleged that Staples and the parent were distinct business entities separately incorporated under the laws of Delaware that were each qualified to do business in California. And, Staples submitted declaration testimony that it was plaintiff's employer. Plaintiff's pleading and Staples's testimony were sufficient to trigger the strong presumption that the parent was not plaintiff's employer. The burden therefore shifted to plaintiff to rebut that presumption by showing triable issues of fact on the four factors that comprise the integrated enterprise test. But, instead of submitting evidence in support of those factors, she points on appeal to Staples's evidence describing a corporate acquisition of the parent and a subsequent reorganization of Staples's business operations which, according to Staples, resulted in the elimination of plaintiff's FSD position. That evidence is insufficient to satisfy plaintiff's burden of demonstrating a triable issue on each of the four integrated enterprise factors. Plaintiff points to no evidence showing, for example, that there was common management between the two corporations. To the contrary, it was undisputed that the decision-maker concerning the elimination of plaintiff's position, Trahey, was employed by Staples, not the parent, and that the ranking formula he used in making that decision was developed by Staples's human resources department, not the parent's department. The trial court therefore did not err in granting

11

summary adjudication of plaintiff's EPA claim against the parent.

###    c.    Narlock

Plaintiff asserts that Narlock was her "employer" for purposes of individual liability to her under the EPA.  Section 1197.5, subdivision (c) provides that "[a]ny employer who violates subdivision (a) or (b) is liable to the employee affected in the amount of the wages, and interest thereon, of which the employee is deprived by reason of the violation . . . ."  In *Martinez v. Combs* (2010) 49 Cal.4th 35, 64 (*Martinez*), the California Supreme Court articulated the following definition for use in determining "who might have liability as an employer for unpaid minimum wages under the Labor Code:  'To employ, . . . has three alternative definitions.  It means:  (a) to exercise control over the wages, hours or working conditions, *or* (b) to suffer or permit to work, *or* (c) to engage, thereby creating a common law employment relationship.'  (*Martinez, supra*, 49 Cal.4th at p. 64.)  [¶]  The Supreme Court stated the alternative definitions of employer are sufficiently broad to encompass a proprietor who employs a worker by contract, permits work by acquiescence, or suffers work to be performed by a failure to hinder.  ([*Id.*] at p. 69.)" (*Turman v. Superior Court* (2017) 17 Cal.App.5th 969, 982.)

Here, plaintiff did not submit evidence raising a triable issue on Narlock's status as her employer under the *Martinez, supra*, 49 Cal.4th 35 definition or any other analogous definition of an employer under the Labor Code.  And, she did not suggest that he was her employer as a matter of law.  On appeal,

however, she relies on Labor Code section 1199.5,[10] which imposes criminal liability on individual employees, such as Narlock, for willful violations of the EPA. According to plaintiff, the Legislature's expansion of the class of persons who can be criminally liable under the EPA suggests a parallel intent to expand the class of persons who can be civilly liable. We disagree.

Had the Legislature intended to make "[e]very employer or other person" who engaged in the conduct enumerated in Labor Code section 1199.5 civilly liable for EPA violations, it would have used such explicit language in the text of section 1197.5. Instead, it left intact the clear language that only "[a]n employer" is civilly liable for certain conduct, with no suggestion or implication that other individuals affiliated with the employer could also be held liable. (See *Brennon C. v. Superior Court* (2022) 13 Cal.5th 662, 669 ["We do not believe the Legislature . . . would have made such a significant change to the scope of the Act without clear language in the statutory text and without any discussion of such a change in the legislative history"]; *People v. Raybon* (2021) 11 Cal.5th 1056, 1068 ["if the drafters had intended to so dramatically change the law[] . . . , we would expect them to have been more explicit about their goals"];

---

[10] Labor Code section 1199.5 provides, in pertinent part: "Every employer or other person acting either individually or as an officer, agent, or employee of another person is guilty of a misdemeanor . . . who willfully does any of the following: [¶] (a) Pays or causes to be paid any employee a wage less than the rate paid to an employee of another sex, race, or ethnicity, as required by [s]ection 1197.5. [¶] (b) Reduces the wages of any employee in order to comply with [s]ection 1197.5."

*Riverside County Sheriffs Department v. Stiglitz* (2014) 60 Cal.4th 624, 647 ["It is doubtful that the Legislature would have instituted such a significant change through silence"].) The trial court therefore correctly concluded that Narlock was entitled to summary adjudication of the EPA claim.

C.    *Second Cause of Action:  Gender Discrimination*

Plaintiff argues that the trial court erred by finding there was no triable issue of fact as to her FEHA gender discrimination claim against Staples and the parent.  According to plaintiff, her prima facie showing of a pay disparity in support of her EPA claim also satisfied the "'adverse employment action' prong of the four[-]factor FEHA [discrimination] test" and her additional evidence of Narlock's gender bias and harassment of her showed that the pay disparity was attributable to her gender.

1.    <u>Legal Principles</u>

"In analyzing claims of discrimination under FEHA, California courts have long used the three-stage burden-shifting approach established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792 . . . for the analysis of title VII (42 U.S.C. § 2000e et seq.) employment discrimination claims. . . . [¶] Under the *McDonnell Douglas* test a plaintiff may establish a prima facie case for unlawful discrimination by providing evidence that '(1) he [or she] was a member of a protected class, (2) he [or she] was qualified for the position he [or she] sought or was performing competently in the position he [or she] held, (3) he [or she] suffered an adverse

14

employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive.' [Citations.] 'Once the employee satisfies this burden, there is a presumption of discrimination, and the burden then shifts to the employer to show that its action was motivated by legitimate, nondiscriminatory reasons. [Citation.] A reason is "'legitimate'" if it is "facially unrelated to prohibited bias, and which if true, would thus preclude a finding of discrimination." [Citation.] If the employer meets this burden, the employee then must show that the employer's reasons are pretexts for discrimination, or produce other evidence of intentional discrimination.' [Citation.]" (*Husman v. Toyota Motor Credit Corp.* (2017) 12 Cal.App.5th 1168, 1181.)

2.  Analysis

Although plaintiff met her prima facie burden on the elements of her EPA claim, that showing of a pay disparity, by itself, did not satisfy her burden under FEHA to make a causal connection between the disparity and her gender. She was also required to submit competent evidence of some circumstance suggesting that Staples paid her less than Narlock because of her gender. To support her claim, plaintiff points to evidence of Narlock's "harassing management style," his favoritism of her subordinate Heather Burke, his expressed desire to have sex with Burke, and his other inappropriate conduct involving Burke. But plaintiff fails to link any of that evidence to either (1) Staples's decision in March 2015 to pay her $22,000 less than Narlock when she started as an ASM; or (2) Staples's decision in July 2017 to pay her $48,000 less than him when she started as a

15

FSD. Absent some evidence that Narlock had a role in making either of those salary decisions, his alleged misconduct toward plaintiff and favoritism of Burke did not, without more, support a reasonable inference of the requisite causal link. The trial court therefore correctly concluded that Staples and the parent were entitled to summary adjudication of plaintiff's FEHA discrimination claim.

D. *Third Cause of Action*: *Sexual Harassment*

Plaintiff contends that the trial court erred by concluding that her FEHA claims against Staples, the parent, and Narlock based on sexual harassment by Narlock were time-barred. Relying on the allegations of her complaint, plaintiff argues that at least one act of harassment by Narlock occurred within the limitations period, making her claim viable under the continuing violations doctrine articulated in *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028 (*Yanowitz*).

1. Background

In her deposition, plaintiff was asked about the incidents involving Narlock that supported her sexual harassment claim. She responded as follows: In 2015, plaintiff attended an event at Staples Center at which Narlock touched her buttocks. She did not report the incident to Staples's human resources department, or ask anyone who witnessed it to make a report, and she did not speak to Narlock about it afterward. The 2015 incident at Staples Center was the only time Narlock touched plaintiff inappropriately.

16

In late 2015, Narlock shared with plaintiff a lewd comment Clay had made to him; and, sometime during 2016, he made another inappropriate sexual comment to plaintiff about Burke. Plaintiff did not report the latter 2016 incident to Staples's human resources department.

On March 7, 2019—well over a year after the last incident of harassment by Narlock in 2016—plaintiff filed her complaint with the DFEH alleging, among other things, sexual harassment.

2. Legal Principles

"An employee who wishes to file suit under the FEHA 'must exhaust the administrative remedy provided by the statute by filing a complaint with the' Department of Fair Employment and Housing (the DFEH), 'and must obtain from the [DFEH] a notice of right to sue. [Citation.] 'The timely filing of an administrative complaint' before the DFEH 'is a prerequisite to the bringing of a civil action for damages.' [Citation.]" (*Pollock v. Tri-Modal Distribution Services, Inc*. (2021) 11 Cal.5th 918, 931 (*Pollock*).) At the time of the alleged sexually harassing conduct here, "the FEHA provided that no administrative complaint alleging a violation of its provisions could be filed with the DFEH 'after the expiration of one year from the date upon which the alleged unlawful practice or refusal to cooperate occurred.' ([Gov. Code] § 12960, former subd. (d).)" (*Pollock, supra*, 11 Cal.5th at p. 931.)

3.    Analysis

Relying on plaintiff's admissions about Narlock's inappropriate touching in early 2015 and his two inappropriate comments in late 2015 and 2016, Staples, the parent, and Narlock moved for summary adjudication of plaintiff's sexual harassment claim under FEHA, arguing that her claim was time-barred under the one-year limitations period set forth in Government Code section 12960, former subdivision (d).

Plaintiff's opposition raised the continuing violations doctrine (*Yanowitz, supra*, 36 Cal.4th 1028) as an exception to the time-bar, but she did not specify any inappropriate act or comment that occurred during the limitations period, much less cite to supporting evidence.

On appeal, plaintiff cites for the first time to paragraph 69 of her complaint describing a June 2018 incident in Colorado during which Narlock made another sexually inappropriate comment to her.  She does not, however, cite to any evidence to support that allegation; and, in her 97-paragraph declaration, she failed to mention it.  Because Staples submitted sufficient evidence in support of its statute of limitation defense (in the form of plaintiff's deposition admissions), the burden on summary adjudication shifted to plaintiff to raise a triable issue on that defense with evidence showing a continuing violation under *Yanowitz, supra*, 36 Cal.4th 1028.  Her failure to submit such evidence supported the conclusion that there was no triable issue of fact on whether the FEHA harassment claims against Staples, the parent, and Narlock were time-barred.

E.     *Fifth Cause of Action:  Retaliation*

Plaintiff raises two challenges to the trial court's ruling on her retaliation claim against Staples and the parent.  First, she asserts she met her burden on the third element of her retaliation claim—"adverse employment action"—by demonstrating that her 2017 promotion to the FSD position was a "sham."  Second, she maintains that she raised a triable issue on that same element based on the circumstances of her termination.

1.     Background

a.     Sham Promotion

In her complaint, plaintiff alleged that following her reporting of Clay's sexual harassment in 2016, Staples retaliated against her in various ways, including by having Burke file a false claim about plaintiff to human resources, reassigning accounts to Narlock, and assigning certain less-desirable territories to plaintiff.  Plaintiff did not, however, allege that her transfer from the ASM position to a FSD position in June 2017 was a lateral transfer to a more disadvantageous position or that Staples took that job action in retaliation for engaging in protected activities.

b.     Corporate Restructuring

In its motion, Staples relied on the declaration of Trahey to explain the reasons for plaintiff's termination.  According to

19

Trahey, due to the acquisition of Staples by a private equity firm, the company's business-to-business sales were reorganized "by geographical region, instead of [by] product category." As part of the strategy of streamlining operations, Staples eliminated the FSD position based on a corporate directive that "each category in each region was to select a single [r]egional [s]ales [d]irector (RSD) from its multiple FSDs." Trahey was "tasked with determining which of the Western Area FSDs would be retained as the sole RSD for each region."

Trahey based his "elimination decision" on a "rankings formula" which was a company-wide competency assessment created by Staples's human resources department. "These rankings assigned numerical grades (out of a possible five points)" to each FSD on the following six "competencies": (1) job knowledge and sales skills; (2) flexibility; (3) execution; (4) problem solving/decision making; (5) effectiveness; and (6) business skills. Trahey did not evaluate or compare FSDs in one region to FSDs in another and did not rely on performance evaluations or sales report numbers as part of his assessment because there had been so many recent changes to territories as part of the company reorganization.

Plaintiff and Narlock were the only FSDs in the Pacific region and Trahey evaluated and ranked them according to the six factors listed above. Trahey scored Narlock above plaintiff on each of the six factors; Narlock's overall score was 26 out of a possible 30 points, while plaintiff's score was 13 out of 30. Based on those scores and the scores of the other FSDs in the Western area, Trahey "informed [p]laintiff, along with several other FSDs, of the decision to end their employment as an FSD."

## 2. Legal Principles

"[I]n order to establish a prima facie case of retaliation under the FEHA, a plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action. [Citations.] Once an employee establishes a prima facie case, the employer is required to offer a legitimate, nonretaliatory reason for the adverse employment action. [Citation.] If the employer produces a legitimate reason for the adverse employment action, the presumption of retaliation ""'drops out of the picture,'"" and the burden shifts back to the employee to prove intentional retaliation. [Citation.]" (*Yanowitz, supra*, 36 Cal.4th at p. 1042.)

In making a motion for summary judgment, a defendant may rely on the complaint in framing the issues upon which it seeks adjudication. "The pleadings play a key role in a summary judgment motion. "'The function of the pleadings in a motion for summary judgment is to delimit the scope of the issues . . .'" and to frame 'the outer measure of materiality in a summary judgment proceeding.' [Citation.] . . . 'The materiality of a disputed fact is measured by the pleadings [citations], which "set the boundaries of the issues to be resolved at summary judgment." [Citations.]' [Citation.] Accordingly, the burden of a defendant moving for summary judgment only requires that he or she negate plaintiff's theories of liability *as alleged in the complaint*; that is, a moving party need not refute liability on some theoretical possibility not included in the pleadings. [Citations.]

21

"Furthermore, """[t]he [papers] filed in response to a defendant's motion for summary judgment may not create issues outside the pleadings and are not a substitute for an amendment to the pleadings.""" [Citation.]' [Citation.] An opposing party's separate statement is not a substitute for amendment of the complaint. [Citation.] Similarly, ""[d]eclarations in opposition to a motion for summary judgment "are no substitute for amended pleadings." . . . If the motion for summary judgment presents evidence sufficient to disprove the plaintiff's claims, . . . the plaintiff forfeits an opportunity to amend to state new claims by failing to request it."" [Citations.]"" (*Hutton v. Fidelity National Title Co.* (2013) 213 Cal.App.4th 486, 493 (*Hutton*).)

3. <u>Analysis</u>

a. Sham Promotion

Plaintiff's complaint alleged that Staples retaliated against her in various and specific ways. It did not, however, include an allegation that Staples retaliated against her by moving her to the FSD position. Plaintiff contends that she should not be limited to the issues raised in her complaint because "at the time the complaint was drafted, [she] was not aware of [an e-mail]" that suggested her promotion was a sham. But plaintiff does not explain why, after becoming aware of the e-mail, she did not request leave to amend the complaint. We therefore need not consider plaintiff's new theory on appeal. (*Hutton, supra*, 413 Cal.App.4th at p. 493.)

b.      Corporate Restructuring

Plaintiff argues that Staples's failure to offer her an opportunity to transfer, in lieu of termination, shows that there was a triable issue as to whether Staples's proffered justification for her termination was pretextual.  But the undisputed evidence showed that (1) plaintiff's position was eliminated as the result of a corporate directive to restructure the management of Staples's sales force; and (2) Trahey's termination decision, consistent with that directive, was based on a ranking formula developed by Staples's human resources department that was applied to FSDs company-wide.  In response to that showing, plaintiff submitted no admissible evidence that Trahey had been authorized to offer transfers or that any of the other FSDs whose positions were eliminated were offered an opportunity to transfer.[11]  Absent such evidence, plaintiff's argument is based on speculation that a transfer was an available alternative to termination under the corporate directive and therefore insufficient to raise a triable issue of fact on pretext.

Plaintiff also argues that the factors used to rank her were subjective, which she claims raises a triable issue on pretext.  We disagree.  Although courts "view with skepticism subjective evaluation methods," the use of "subjective criteria [is] not wrongful per se . . . ."  (*Garrett v. Hewlett-Packard Co.* (10th Cir.

---

[11]     As we note above, plaintiff does not challenge the trial court's evidentiary rulings sustaining defendants' objections to her declaration.  Thus, in evaluating whether plaintiff raised a triable issue on pretext, we cannot consider any statements in that declaration to which objections were sustained.

2002) 305 F.3d 1210, 1218.) And, in response to Staples's undisputed evidence that Trahey used and applied the same six factors to each of the 11 FSDs in his Western area as were used and applied company-wide, plaintiff did not submit evidence to suggest that the use of these factors was a pretext, that Trahey had any animus toward plaintiff, or that he had singled her out for a low ranking.

Finally, plaintiff points to the purported contradiction between Trahey's "*very* poor" ranking of plaintiff and her promotion two years earlier, suggesting that it raises a triable issue as to whether Trahey manipulated plaintiff's low score to create an excuse for her termination, when no legitimate justification existed. But again, plaintiff submitted no evidence to support her assertion, such as, for example, testimony showing that Staples used a similar ranking system two years earlier under which plaintiff was scored higher and earned the promotion. Thus, plaintiff's earlier promotion, without more, failed to raise a triable issue on pretext.

F.      *Fourth and Seventh Causes of Action: Failure to Prevent Discrimination, etc., and Wrongful Termination*

Plaintiff agrees that her failure to prevent discrimination and wrongful termination causes of action against Staples and the parent are based upon the existence of an underlying FEHA violation.[12] Because she did not raise a triable issue as to any

---

[12]     Plaintiff did not allege or otherwise contend that she was wrongfully terminated in violation of the public policies underlying the EPA; she claimed that she was terminated for her

such underlying violation, those derivative claims against Staples and the parent also fail.[13]

---

complaints about Clay's sexual harassment in violation of FEHA's public policies against retaliation.

[13]     Plaintiff's remaining challenges concerning the liability of Staples and the parent for punitive damages under FEHA are also dependent on plaintiff having a viable underlying FEHA claim.  Those issues are therefore mooted by our conclusion that Staples and the parent are not liable to plaintiff under FEHA.

# V.   DISPOSITION

The judgment is reversed, and the matter is remanded with directions to enter a new order denying summary adjudication on plaintiff's first cause of action against Staples for violation of the EPA, but granting summary adjudication on plaintiff's remaining causes of action and claims for punitive damages.  Plaintiff is awarded costs on appeal.

KIM, J.

We concur:

RUBIN, P. J.

BAKER, J.

26

Filed 10/18/22

**CERTIFIED FOR PARTIAL PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| JOYCE ALLEN, | B311426 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 19STCV08311) |
| v. | |
| STAPLES, INC., et al., | ORDER MODIFYING OPINION AND CERTIFYING OPINION FOR PARTIAL PUBLICATION |
| Defendants and Respondents. | |
| | [NO CHANGE IN JUDGMENT] |

THE COURT:

Upon application of appellant and for good cause appearing, it is ordered that the opinion filed September 20, 2022, shall be partially published in the Official Reports.

1

Pursuant to California Rules of Court, rule 8.1105(b), this opinion is certified for publication with the exception of Discussion part B. 3., subparts b. and c., and parts C. through F.

RUBIN, P. J.    BAKER, J.    KIM, J.

2